Filed 4/18/13  In re Rachael W. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re RACHAEL W., A Person Coming Under the Juvenile Court Law. | 2d Juv. No. B245040 (Super. Ct. No. JV45420) (San Luis Obispo County) |
| SAN LUIS OBISPO DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v. B. W., Defendant and Appellant. | |

       B. W. appeals from an order terminating his parental rights to Rachael W. and freeing Rachael for adoption.  (Welf. & Inst. Code, § 366.26.)[1]  Appellant claims that the trial court failed to comply with the Indian Child Welfare Act (ICWA;  25 U.S.C. § 1901 et seq.) and asserts that the parent-child/sibling relationship exception precludes Rachael's adoption.  (§§ 366.26, subd. (c)(1)(B)(i) &(v).)  We affirm.

*Facts and Procedural History*

       In March 2010, police found Rachael and her brothers living in a car with their father, appellant.  Rachael's youngest brother, Daniel, was unconscious,  had open sores (scabies and eczema), and was transported to the hospital for treatment.  Rachael

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

1

told authorities that the family spent nights outside a Food4Less store and used the store bathroom.

On March 23, 2010, San Luis Obispo County Department of Social Services, Child Welfare Services (CWS) filed a dependency petition for failure to protect Rachael (age 8) and her brothers Ryan (age 10), Robert (age 7), and Daniel (age 6). (§ 300, subds. (b) & (j).) The petition referred to a prior dependency proceeding in which appellant failed to protect the children from an uncle. The petition stated that the biological mother's parental rights were terminated in a Los Angeles County dependency proceeding with respect to Rachael's half-sister. Appellant assumed custody of Rachael and the boys in 2007 after mother abandoned them.

Appellant submitted on jurisdiction and disposition on May 26, 2010. The boys were placed in a Paso Robles foster home and Rachael was placed in another home. Rachael was struggling in school and received counseling for behavioral and emotional problems. CWS reported that appellant had difficulty meeting his own basic needs and lacked the ability to provide for the children.

At the 12 month review hearing (March 16, 2011), appellant was still living in his car and had a new girlfriend who had given birth to his child. Appellant said that he and the girlfriend "are going to get a place for the boys and she will be their mom." Rachael feared she would be homeless again if she reunited with appellant.

At the 18 month review hearing, the trial court continued services so that appellant could move to a larger home. Appellant was unemployed and lived in a small motel room with bunk beds for the boys. Appellant's girlfriend (Lila M.) was pregnant with his second child but not authorized to care for Rachael or the boys due to a prior child welfare history.

At the 24 month review hearing, CWS recommended that services be terminated. Appellant had quit working and was living in a motel room with the boys and some dogs. A Court Appointed Special Advocate (CASA) reported that the boys were going to school dirty and smelled of urine from bed wetting. Rachael complained about her visits. Appellant's motel room was filthy, there was feces smeared on the

2

bathroom walls and toilet, and Rachael saw appellant show pictures of topless women to the boys.

The CASA worker reported that "[a]fter 24 months in the current Dependency case and 8 placements, Rachael is ready for something better than waiting; waiting for a mother who has abandoned her . . . ; waiting for her father to do the few things that the DSS says he must do to get her back; [and] waiting for a secure, permanent placement with someone who can understand her." Rachael loved her brothers but was sure that appellant could not meet her needs or provide a safe home. Appellant planned to move to the paternal grandmother's house which was a concern. The grandmother disliked Rachael and blamed her for the dependency proceeding. An uncle planned to live in the house despite unresolved reports about the uncle's past behavior with children. Rachael feared the uncle and was sure appellant would be homeless again.

The trial court terminated services as to Rachael and dismissed the petitions with respect to Rachael's brothers who were living with appellant and the uncle at grandmother's house. At the 366.26 hearing, it was uncontroverted that Rachael wanted to be adopted. The social worker reported that Rachael is a "bright, positive, communicative, and respectful girl who wants desperately to have a 'normal' life and to be adopted." The trial court found that Rachael was adoptable and concluded that the parent-child/sibling relationship exceptions did not preclude adoption.

*ICWA*

Appellant argues that CWS failed to give proper ICWA notice. (§ 224.3, subd. (d); *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1200-1201.) Before the detention hearing, appellant said the children may be members of the "Blackfoot" or Cherokee tribe because his deceased father and grandfather were members of the Cherokee tribe.[2]

---

[2] Appellant signed an ICWA-020 form stating, under penalty of perjury, that his Indian ancestry was with the "Blackfoot" tribe. This was at odds with a 2006 dependency case in which appellant stated that he did not have Native American Heritage.

3

Based on the information provided, CWS served an ICWA-030 notice on the Blackfeet tribe, three Cherokee tribes, and the U.S. Department of Interior, Bureau of Indian Affairs. Each tribe responded in writing that the children were not members or eligible to be a members of the tribe.[3] Alleged deficiencies in an ICWA notice are harmless where, as here, the tribe receives notice and determines that the child is not registered or eligible to register as a member of the tribe. (*In re E.W.* (2009) 170 Cal.App.4th 396, 402-403.)

Appellant complains that CWS did not ask extended family members about Rachael's Indian heritage but there was no prejudice. (See e.g., *In re I.W.* (2009) 180 Cal.App.4th 1517, 1531-1532.) Our courts have recognized that technical compliance with the ICWA notice requirements may not be required where there has been substantial compliance. (*Id.*, at p. 1531.) " 'Parents unable to reunite with their children have already caused the children serious harm; the rules do not permit them to cause additional unwarranted delay and hardship, without any showing whatsoever that the interest protected by the ICWA are implicated in any way.' [Citation.]" (*Id.*, at p. 1532.)

The jurisdiction/disposition minute order states that ""County Counsel makes an offer of proof as to ICWA, counsel stipulate to accept offer of proof and the Court signs ICWA orders on the record." Appellant did not object when the trial court found that CWS had complied with the ICWA notice requirements. Nor did appellant object to an April 2010 letter from the Bureau of Indian Affairs that "county already has provided an appropriate notice to the tribe or tribes."

Appellant claims that CWS has an ongoing duty to inquire but "ICWA does not require further inquiry based on mere supposition. [Citation.]" (*In re K.M.* (2009) 172 Cal.App.4th 115, 119.) Appellant's concerns about the scope of the ICWA

---

[3] Written responses were received from the Cherokee Nation, the Blackfeet Tribe, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians.

investigation is moot given that each tribe has determined that Rachael is not an Indian child or eligible to be a tribe member. (§ 224.3, subd. (e)(1); *In re William K.* (2008) 161 Cal.App.4th 1, 12.) " 'A tribe's determination that the child is or is not a member or eligible for membership in the tribe is conclusive.' [Citation.]" (*Alicia B. Superior Court* (2004) 116 Cal.App.4th 856, 865. )

*Beneficial Relationship Exception*

Appellant argues that the parent-child/sibling relationship exception precludes Rachael's adoption. (§ 366.26, subd. (c)(1)(B)(i) & (v).) In determining whether the exception applies, the trial "court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parents are not terminated. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

The sibling relationship exception is more limited and " 'focuses exclusively on the benefits and burdens to the adoptive child [i.e., Rachael], not the other siblings.' " (*In re Celine R.* (2003) 31 Cal.4th 45, 54.) "Reflecting the Legislature's preference for adoption when possible, the 'sibling relationship exception contains strong language creating a heavy burden for the party opposing adoption. It only applies when the juvenile court determines that there is a "compelling reason" for concluding that the termination of parental rights would be "detrimental" to the child due to "substantial interference" with a sibling relationship.' [Citation.]" (*Id.*, at p. 61.)

Rachael has lived in foster homes more than three years and wants to be adopted. Rachael told the CASA worker it would be "no big deal" if she did not see appellant and said that she would like occasional visits but "not something set up every month." Stacy Willis, an expert in adoptions, testified that adoption would provide Rachael the stability and permanency that she so badly needs. Rachael's therapist agreed that adoption would benefit Rachael even if visitations were less. Rachael wants to be

5

adopted by her prospective adoptive mother who is committed to providing a loving home and is open to family visits if it is in Rachael's best interests.

The trial court reasonably concluded that the benefits of adoption outweigh the benefit of maintaining a sibling relationship with her brothers or a parent/child relationship with appellant. "A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent [or sibling]." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.)    The judgment is affirmed

NOT TO BE PUBLISHED.


                                        YEGAN, J.
We concur:


        GILBERT, P.J.


        PERREN, J.

6

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____

John L. Dodd, under appointment by the Court of Appeal, for Appellant.

Rita L. Neal, County Counsel, County of San Luis Obispo and Leslie H. Kraut, Deputy County Counsel, for Respondent.