74 Cal.Rptr.3d 863 (2008)
161 Cal.App.4th 1189
In re ALICE M., a Person Coming Under the Juvenile Court Law.
Monterey County Department of Social & Employment Services, Plaintiff and Respondent,
v.
Tammy L., Defendant and Appellant.
No. H031794.
Court of Appeal of California, Sixth District.
April 9, 2008.
*865 Charles J. McKee, County Counsel William K. Rentz, Senior Deputy Office of the County Counsel, County of Monterey, Attorneys for Plaintiff and Respondent.
Julie E. Braden, Under Appointment by the Sixth District Appellate Program, San Diego, Attorney for Defendant and Appellant.
Jennifer B. Henning, Attorney for Amicus Curiae California State Association of Counties on behalf of Plaintiff and Respondent.
*864 MIHARA, J.
Appellant Tammy L. appeals from an order terminating her parental rights over her daughter, Alice M. (aka Alicia M.), and selecting adoption as the permanent plan for Alice pursuant to Welfare and Institutions Code section 366.26.[1] In a prior appeal, we reversed an earlier order terminating parental rights due to a failure to adequately inquire about Indian ancestry pursuant to the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). (In re Alicia M. (Feb. 14, 2007, H030449), 2007 WL 467761 [nonpub. opn.].) On remand the trial court again terminated appellant's parental rights. Appellant contends the new order terminating parental rights must be reversed for failure to comply with the notice requirements of ICWA. We agree, and reverse the order.

*866 I. Background
On June 7, 2005, the Monterey County Department of Social and Employment Services (Department) filed a juvenile dependency petition, alleging that Alice came within section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). The petition stated that Alice tested positive for methamphetamine at birth, that appellant failed to provide appropriate care for her other children, that Alice's father, Steve M., was incarcerated, and that both parents had significant criminal histories relating to substance abuse.
On August 12, 2005, the juvenile court sustained the petition and declared Alice a dependent. At the selection and implementation hearing on June 16, 2006, the juvenile court selected adoption as the permanent plan and terminated parental rights. This court reversed that order. (In re Alicia M. (Feb. 14, 2007, H030449), 2007 WL 467761 [nonpub. opn.].) We remanded the case to the juvenile court for the requisite inquiry into whether Alice is or may be an Indian child and to order the completion of JV-130 forms entitled "Parental Notification of Indian Status."[2] (Ibid.) Depending upon the result of this inquiry, the juvenile court was ordered to direct the Department to give notice of the proceedings in compliance with ICWA. (Ibid.)
On October 6, 2006, prior to the remittitur in this case, appellant completed a JV-130 form. Appellant answered "American Indian, Navajo-Apache" in response to the query whether Alice "is or may be a member of, or eligible for membership in, a federally recognized Indian tribe." Alice's father denied any Indian heritage. On February 21, 2007, a social worker sent the JV-135 form, "Notice of Involuntary Child Custody Proceedings for an Indian Child," to all federally recognized Navajo and Apache tribes with notice of a hearing set for June 8, 2007.[3] Notice also was sent to the Bureau of Indian Affairs (BIA). Eight tribes responded to the notice by indicating that Alice was not eligible for tribal membership. Three tribes did not, respond: Jicarilla Apache Nation, Fort Sill Apache of Oklahoma, and Apache Tribe of Oklahoma.
The remittitur from the prior appeal in this case issued on April 17, 2007. On July 6, 2007, the juvenile court determined that ICWA did not apply and reinstated the prior orders for termination of parental rights and adoption. Appellant filed a timely notice of appeal.

II. Discussion
Congress passed ICWA to cure "abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." (Mississippi Band of Choctaw Indians v. Holyfield (1989) 490 U.S. 30, 32, 109 S.Ct. 1597, 104 L.Ed.2d 29.) As defined by ICWA, an Indian child is "... any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) If there is reason to believe that the child that is the subject of the *867 dependency proceeding is an Indian child, ICWA requires notice to the child's Indian tribe of the proceeding and of the tribe's right of intervention. (25 U.S.C. § 1912(a); see also § 224.2, subd. (b).) "Notice is a key component of the congressional goal to protect and preserve Indian tribes and Indian families. Notice ensures the tribe will be afforded the opportunity to assert its rights under [ICWA] irrespective of the position of the parents, Indian custodian or state agencies." (In re Kahlen W. (1991) 233 Cal.App.3d 1414, 1421, 285 Cal.Rptr. 507 (Kahlen W.).)
Appellant contends that the court's implicit finding that the Department complied with the notice requirements of ICWA is not supported by substantial evidence. She argues specifically that the Department failed to provide adequate notice to the three unresponsive tribes. The Department contends, however, that appellant forfeited any argument regarding proper ICWA notice by failing to raise an objection in the juvenile court. The Department also asserts that it complied substantially with the notice requirements. In supplemental briefing, the Department argues that it only was required to conduct additional inquiry into Alice's status as an Indian child, and was not required to follow the strict notice requirements set forth in section 224.2. The California State Association of Counties (CSAC) joined in this argument in an amicus brief.

A. Forfeiture
The generally accepted rule in dependency cases is that the forfeiture doctrine does not bar consideration of ICWA notice issues on appeal. (See, e.g., In re Marinna J. (2001) 90 Cal.App.4th 731, 739, 109 Cal.Rptr.2d 267 (Marinna J.).) "As this court has held, `[t]he notice requirements serve the interests of the Indian tribes "irrespective of the positions of the parents" and cannot be waived by the parent.' [Citation.] A parent in a dependency proceeding is permitted to raise ICWA issues not only in the juvenile court, but also on appeal even where, as here, no mention was made of the issue in the juvenile court." (In re Justin S. (2007) 150 Cal.App.4th 1426, 1435, 59 Cal.Rptr.3d 376.) The Department argues, however, that this general principle should not apply when the issue of ICWA compliance was raised in a prior appeal. Citing In re X.V. (2005) 132 Cal.App.4th 794, 33 Cal.Rptr.3d 893 (X.V.) and In re Amber F. (2007) 150 Cal.App.4th 1152, 58 Cal.Rptr.3d 874 (Amber F.), the Department contends that appellant forfeited any argument regarding proper ICWA notice because she failed to object at the hearing on remand. In essence, the Department's position is that at some point the burden must be placed on the parents to establish that their child is an Indian child. We disagree.
In X.V., supra, 132 Cal.App.4th at page 804, 33 Cal.Rptr.3d 893, the appellate court barred a second appeal relating to compliance with ICWA notice provisions. In that case, after remand from the initial appeal involving ICWA notice, the agency sent 20 notices to Indian tribes and four tribes responded. (Id. at pp. 799-800, 33 Cal.Rptr.3d 893.) The court found that ICWA notice requirements had been satisfied and that the minor was not an Indian child. (Id. at p. 800, 33 Cal.Rptr.3d 893.) The parents raised no objection regarding the adequacy of the notices. (Ibid.) The parents then appealed and sought a writ of habeas corpus, claiming that the notices included inaccurate and potentially incomplete information. (Id. at pp. 800-801, 33 Cal.Rptr.3d 893.) The court concluded that the parents forfeited a second appeal of ICWA notice issues. (Id. at p. 804, 33 Cal.Rptr.3d 893.) The court explained: "As a matter of respect for the children involved and the judicial system, as well as *868 common sense, it is incumbent on parents on remand to assist the Agency in ensuring proper notice is given. Here, for instance, the inadequacies in the notices, a misspelling and the apparent use of a nickname, could easily have been rectified at the juvenile court given a timely objection." (Ibid.)
Similarly, in the first appeal in Amber F., the appellate court remanded for lack of compliance with ICWA notice requirements. (Amber F., supra, 150 Cal.App.4th at p. 1156, 58 Cal.Rptr.3d 874.) On remand, the social worker sent a second round of notices and the juvenile court again found that ICWA did not apply. (Id. at pp. 1154-1155, 58 Cal.Rptr.3d 874.) The mother appealed a second time and argued that no notice was sent to one identified tribe, that one mailing was misaddressed, and that the wrong information was sent to the tribes. (Id. at p. 1155, 58 Cal.Rptr.3d 874.) The court, relying on X.V., held that the mother forfeited the issue by failing to bring the errors to the attention of the juvenile court. (Id. at p. 1156, 58 Cal.Rptr.3d 874.) The Amber F. court theorized: "At this juncture, allowing [mother] to raise these issues on appeal for the first time opens the door to gamesmanship, a practice that is particularly reprehensible in the juvenile dependency arena." (Ibid.)
We decline to follow X.V. and Amber F. First, this appeal presents only the first challenge to ICWA notice; in the prior appeal, we found that the Department had failed even to inquire of Indian ancestry pursuant to ICWA. Both X.V. and Amber F. dealt with successive challenges to ICWA notice. (See, e.g., X.V., supra, 132 Cal.App.4th at p. 804, 33 Cal.Rptr.3d 893 [concluding that Congress did not intend "to require successive or serial appeals challenging ICWA notices for the first time on appeal"].) Second, unlike X.V., we are not presented with a situation in which the allegedly deficient notice was based on the notice's content and, thus, related to the information provided by or within the purview of the appellant. Here, the alleged notice deficiencies (failure to send to the tribal chairpersons or designated agents and an incorrect address) were solely the result of the Department's actions and within the Department's control. Finally, although some of the facts of Amber F. may be analogous, we disagree with the underlying rationale. Invoking the forfeiture doctrine because appellant raised an ICWA inquiry issue in a prior appeal would give the Department a free pass in complying with ICWA based solely on its previous ICWA failure. Such a result is contrary to ICWA's purpose and to the principle that the interest in proper ICWA notice belongs to the tribesthe same tribes that may have received deficient notice, or no notice at all. We find no statutory support or persuasive policy basis for shifting the burden of ICWA compliance to the child's parents, even if ICWA was raised in a prior appeal. We regret that ICWA errors often delay the resolution of dependency proceedings, but cannot conclude that the prospect of such a delay excuses non-compliance at the expense of those that ICWA is intended to protect. (See Kahlen W., supra, 233 Cal. App.3d at pp. 1425-1426, 285 Cal.Rptr. 507 [rejecting forfeiture argument; "[w]hile we recognize the need for timely resolution of child custody proceedings, respondent cannot benefit from the delay it created"].)
We reject the Department's forfeiture argument and therefore turn to the merits of appellant's claim.

B. Notice to the Indian Tribes
In the context of juvenile dependency proceedings, notice to Indian tribes is governed by both federal and state law. *869 ICWA provides that if "the court knows or has reason to know that an Indian child is involved[ ]" in an involuntary state court proceeding, "the party seeking foster care placement of, or termination of parental rights to, an Indian child shall notify ... the Indian child's tribe...." (25 U.S.C. § 1912(a).) Section 224.2, subdivision (b) reiterates that "[n]otice shall be sent whenever it is known or there is reason to know that an Indian child is involved, and for every hearing thereafter ... unless it is determined that the Indian Child Welfare Act [] does not apply to the case[.]" At the time notice was sent in' this case (February 21, 2007), the applicable rule in the California Rules of Court[4] further provided that if "the court knows or has reason to know that the child is or may be an Indian child," the enumerated notice procedures must be followed. (Former rule 5.664(f), as amended effective January 1, 2007, italics added.)[5] These procedures included sending a JV-135 form via registered or certified mail with return receipt requested, addressing the notice to the tribal chairperson or other designated agent for service, and sending notice to "all tribes of which the child may be a member or may be eligible for membership." (Former rule 5.664(f)(1), (2), (3), as amended January 1, 2007.)
At the least, the information in this case gave the court reason to know that Alice may be an Indian child. In completing the JV-130 form, appellant stated that Alice is or may be a member of, or eligible for membership in, an Apache and/or Navajo tribe. The ambiguity in the form and the omission of more detailed information, such as specific tribal affiliation or tribal roll number, do not negate appellant's stated belief that Alice may be a member of a tribe or eligible for membership.
The Department and CSAC nevertheless maintain that the information provided in this case triggered only a duty of further inquiry, and not the specific notice requirements of section 224.2 and the rules of court. Senate Bill No. 678, enacted in 2006, added several ICWA-related provisions to the Welfare and Institutions Code, including sections 224 through 224.6. (Sen. Bill No. 678 (2005-2006 Reg. Sess.); Stats.2006, ch. 838, §§ 1-57.) CSAC contends that the codification of ICWA notice requirements in section 224.2 and related sections rejected established California caselaw regarding the standard required to trigger notice. CSAC argues that the requirement in section 224.2 that notice "be sent whenever it is known or there is reason to know that an Indian child is involved" makes clear that notice is not required unless there is a specific "claim that the parent or child is a member or eligible for membership in an Indian tribe." (Italics added.) CSAC views the inclusion of the "is involved" language as repudiation of California caselaw that has consistently held that a "suggestion" that the child is an Indian child is sufficient to invoke notice. (See, e.g., In re Merrick V. (2004) 122 Cal.App.4th 235, 246, 19 Cal. Rptr.3d 490 ["the juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement"]; In re Nikki R. (2003) 106 Cal.App.4th 844, 848, 131 Cal. Rptr.2d 256 [same]; Dwayne P. v. Superior Court (2002) 103 Cal.App.4th 247, 256-258, 126 Cal.Rptr.2d 639 [reviewing cases and concluding that, in accordance with federal guidelines, courts have interpreted the ICWA notice provision broadly; finding *870 statement that child has "Cherokee Indian heritage" sufficient to trigger notice].)
We reject this argument. First, the Legislature did not adopt new notice language in Senate Bill No. 678, but codified the existing federal requirement in state statute. As CSAC notes, the "is involved" language is taken directly from ICWA itself. (See 25 U.S.C. § 1912(a).) Thus, section 224.2 adopted the same language California courts relied upon in fleshing out the notice standard prior to the enactment of Senate Bill No. 678. (See, e.g., Marinna J., supra, 90 Cal.App.4th 731, 736-737, 109 Cal.Rptr.2d 267 [explaining that 25 U.S.C. § 1912(a) requires the department "to notify `the Indian child's tribe' of the proceedings if `the court knows or has reason to know that an Indian child is involved[ ]'" and concluding that ICWA notice requirements were therefore violated because "the court had reason to know the minor was an Indian child of Cherokee heritage"].) In this context, we cannot conclude that the codification of the "is involved" language is necessarily a rejection of pre-existing caselaw on the issue of notice.
Second, contrary to CSAC's contention that Senate Bill No. 678 notably excluded from the determination of Indian child status those terms found in pre-existing caselaw ("such as `mere hint' or `suggestion' of Indian heritage"), section 224.3 explicitly adopts such language. Section 224.3, which is titled "[determination whether child is an Indian child; considerations; scope of inquiry[,]" states: "The circumstances that may provide reason to know the child is an Indian child include, but are not limited to, the following: (1) A person having an interest in the child ... provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of the tribe ...."(§ 224.3, subd. (b), italics added; see also rule 5.481(a)(5)(A) [reiterating that "information suggesting that child is an Indian child" may provide "reason to know the child is an Indian child"].) Even if, as CSAC suggests, this type of language establishes a lower threshold for triggering notice than that found in the federal statute, we must apply California law. As discussed below, see infra section II.C, section 224 provides that the court shall follow California law if it provides a higher level of protection to the Indian tribe. (See § 224, subd. (d).) BIA guidelines state that the states may provide greater protection for rights guaranteed by ICWA, as long as the additional protections do not deprive other parties of their rights under the act. (See 44 Fed.Reg. 67584 (Nov. 26, 1979).)
Third, nothing in the bill text or stated legislative purpose suggests that the Legislature intended to override or reject the California courts' interpretation of ICWA notice requirements. (See generally Stats. 2006, ch. 838, pp. 4952-4953.) The bill states only that it "would revise, recast, and expand various provisions of state law to, among other things, apply to certain children who do not come within the definition of an Indian child...." (Id. at p. 4952:) Section 224 ("Legislative findings and declarations; Indian child custody proceedings") reiterates the state's commitment "to protecting the essential tribal relations and best interest of an Indian child ... by placing the child, whenever possible, in a placement that reflects the unique values of the child's tribal culture and is best able to assist the child in establishing, developing, and maintaining a political, cultural, and social relationship with the child's tribe and tribal community." (§ 224, subd. (a)(1).) These provisions *871 do not suggest an intention to scale back ICWA procedures, but an intent to expand, or at least broadly apply, ICWA protection. Absent clear language regarding the intent to abrogate existing law, we find no reason to reject years of established and well-reasoned caselaw.
As a final point, CSAC and the Department argue that recent changes to the California Rules of Court illuminate the Legislature's intent to impose a heightened standard for notice that is distinct from the standard that triggers only inquiry into Indian child status. Effective January 1, 2008, rule 5.481 provides that if the Department "knows or has reason to know that an Indian child is or may be involved, [it] must make further inquiry as soon as practicable by[,]" among other things, "[contacting the tribes and any other person that reasonably can be expected to have information regarding the child's membership status or eligibility." (Rule 5.481(a)(4)(c), italics added.) There is no requirement that in contacting the tribes the Department use the strict notice procedures set forth in section 224.2. In contrast, "[i]f it is known or there is reason to know that an Indian child is involved in a proceeding ... the court must send Notice of Child Custody Proceeding for Indian Child (form ICWA-030) to ... the Indian child's tribe, in the manner specified in Welfare and Institutions Code section 224.2...." (Rule 5.481(b)(1), first italics added.)
We agree that under this rule the duty to inquire is triggered by a lesser standard of certainty regarding the minor's Indian child status ("is or may be involved") than is the duty to send formal notice to the Indian tribes ("is involved"). We disagree, however, that the type of information provided in this case triggered only a duty of inquiry and not of notice. It appears to this court that rule 5.481's distinction between inquiry and notice is intended only to provide additional guidance regarding the affirmative duty to inquire set forth in section 224.3. (See § 224.3, subd. (a) [establishing an "affirmative and continuing duty to inquire" whether the child "is or may be an Indian child"].) We posit that there are many instances in which vague or ambiguous information is provided regarding Indian heritage or association (e.g., "I think my grandfather has some Indian blood." "My great-grandmother was born on an Indian reservation in New Mexico."). In these types of cases, which are clearly distinguishable from the facts present here, inquiry is necessary before any attempt at notice to a specific tribe even can be made. In contrast, the available information regarding Alice's Indian ancestry suggests that Alice is a member of or is eligible for membership in an identified Indian tribe (one of the federally recognized Apache or Navajo tribes) and, thus, notice was required.[6]
We conclude that notice pursuant to section 224.2 was required in this case and that the notices sent to Jicarilla *872 Apache Nation, Fort Sill Apache of Oklahoma, and Apache Tribe of Oklahoma did not comply fully with ICWA. Section 224.2 states that "any notice sent in an Indian child custody proceeding under this code shall be sent to ... the minor's tribe and comply with" the listed requirements. (§ 224.2, subd. (a).) These requirements include notice addressed "to the tribal chairperson, unless the tribe has designated another agent for service." (§ 224.2, subd. (a)(2); see also 25 C.F.R. § 23.12 [designated agents and addresses are published in the Federal Register].) The notices for the three unresponsive tribes were not sent to the tribal chairperson or, in the case of Jicarilla Apache Nation, the designated agent. (See 71 Fed.Reg. 43788 (Aug. 2, 2006).) Additionally, the notice to the Fort Sill Apache Tribe of Oklahoma was sent to "Route 1, Box 121" in Apache, Oklahoma. The correct address, according to the Federal Register, is "Route 2, Box 121, Apache, Oklahoma 73006." (71 Fed.Reg. 43788, 43804 (Aug. 2, 2006).)
Although the Department received signed return receipts from its notices to these tribes, the tribes did not respond to the notices. Thus, the record contains no verification that notice actually reached Fort Sill Apache Tribe of Oklahoma or the appropriate representatives of Jicarilla Apache Nation and Apache Tribe of Oklahoma.[7] We therefore reject the Department's assertion that it complied substantially with ICWA and find no basis to support the court's implicit finding of compliance. (See Nicole K. v. Superior Court (2007) 146 Cal.App.4th 779, 784, 53 Cal.Rptr.3d 251 [failure to provide notice to designated agent or address, without evidence of actual notice, cannot be considered harmless error].)

C. Notice to the BIA
In a request for supplemental briefing, this court asked the parties whether notice to the BIA was an adequate substitute for the inadequate notice to three of the Apache tribes. In In re Edward H. (2002) 100 Cal.App.4th 1, 3, 122 Cal.Rptr.2d 242 (Edward H.), the court held that "proper notice to some but not all possible tribes in which a dependent child may be eligible for membership does not violate [] ICWA provided the [BIA] also receives notice[.]" In that case, the child's father indicated that he belonged to a Choctaw tribe, but the social worker noticed only the BIA and two of the three federally recognized Choctaw tribes. (Id. at p. 4, 122 Cal.Rptr.2d 242.) The failure to notice the third tribe was excused. (Id. at p. 6, 122 Cal.Rptr.2d 242.) The Edward H. court based its holding, in part, on the then-applicable rule of court, rule 1439. Former rule 1439(f)(4) stated: "If the identity or location of the parent or Indian custodian or the tribe cannot be determined, notice must be sent to the specified office of the Secretary of the Interior[.]" (See Edward H., at p. 5, 122 Cal.Rptr.2d 242.) The rule paraphrased language found in ICWA (25 U.S.C. § 1912(a) ["[i]f the identity or location of the ... tribe cannot be determined, such notice shall be given to the Secretary ..."]) and the Code of Federal Regulations (see 25 C.F.R. § 23.11(b) [same requirement]). (See Edward H., at p. 5, 122 Cal.Rptr.2d 242.)
California law has changed since Edward H. was decided, and we depart from that court's conclusion. Section 224.2, subdivision *873 (a)(3), effective January 1, 2007, requires that notice "be sent to all tribes of which the child may be a member or eligible for membership, until the court makes a determination as to which tribe is the child's tribe...." In a case such as this, the language of subdivision (a)(3) must be construed as requiring notice to all federally recognized tribes within the general umbrella identified by the child's parents or relatives. Based on the information provided by appellant, all recognized Apache tribes are "tribes of which [Alice] may be a member," even if the family's precise tribal affiliation, if any, has not been determined.
As the First District Court of Appeal concluded in In re J.T. (2007) 154 Cal.App.4th 986, 993, 65 Cal.Rptr.3d 320, the statutory adoption of the higher standard in section 224.2 prevails "over more lenient ICWA requirements" and undermines the rationale of Edward H. The application of the broader "all tribes" requirement, which may be viewed as more protective of the tribes than the ICWA requirement, is supported by statute. Subdivision (d) of section 224 states that "[i]n any case in which this code or other applicable state or federal law provides a higher standard of protection to the rights of ... the Indian child's tribe, than the rights provided under the Indian Child Welfare Act, the court shall apply the higher standard." We therefore conclude that notice to the BIA is not an adequate substitute, in this case, for notice to all federally recognized Apache tribes.[8]

III. Disposition
The July 6, 2007 order is reversed. The case is remanded to the juvenile court with directions to order the Department to complete notice to the tribes in accordance with ICWA. If, after proper notice, the court finds that Alice is an Indian child, the court shall proceed in conformity with ICWA. If, after proper notice, the court finds that Alice is not an Indian child, the order terminating parental rights and selecting adoption as the permanent plan shall be reinstated.
WE CONCUR: BAMATTRE-MANOUKIAN, Acting P.J., and McADAMS, J.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.
[2] The JV-130 form was replaced, effective January 1, 2008, with ICWA-020, also entitled "Parental Notification of Indian Status." (See Cal. Rules of Court, rule 1.31; Cal. Rules of Court, appen. A, Judicial Council Legal Forms List.)
[3] The JV-135 form was replaced, effective January 1, 2008, with ICWA-030, entitled "Notice of Child Custody Proceeding for Indian Child." (See Cal. Rules of Court, rule 1.31; Cal. Rules of Court, appen. A, Judicial Council Legal Forms List.)
[4] All further rule references are to the California Rules of Court unless otherwise noted.
[5] Rule 5.664 was subsequently amended, effective February 23, 2007, and ultimately repealed and replaced, in part, with current rule 5.481.
[6] The Department stresses a practical concern raised by requiring notice based solely on the suggestion of Indian ancestry. The Department contends that although the federal database of registered tribes contains the proper address information for notice, it is easier to search the state database (which may have different address information) by common tribal name (e.g., Apache). Assuming this is the case, we fail to see why the Department cannot use the databases in tandem the state database to determine quickly the fulsome list of specific tribes within a broad group (e.g., Apache) that must be contacted, and then the federal database to double-check the contact information. The Department's suggestion that sending the "Notice of Child Custody Proceeding for Indian Child" (ICWA-030 form) to the tribes as notice is more burdensome than sending the same form in furtherance of its duty of inquiry is unavailing.
[7] The Department's request for judicial notice regarding the geographic size and population of Apache, Oklahoma was granted by separate order on October 22, 2007. However, we find the information is insufficient to show actual notice to Fort Sill Apache Tribe of Oklahoma.
[8] The court rule in effect at the time notice was sent in this case included a provision similar to that found in former rule 1439. (See former rule 5.664(f)(4), amended effective January 1, 2007.) However, the rule is not controlling over the statute. Moreover, the current rule of court is consistent with section 224.2 and omits any language regarding alternative notice to the BIA. (See rule 5.481(b)(1).)