Filed 12/23/13  In re Athena Q. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ATHENA Q., a Person Coming Under the Juvenile Court Law. | D064265 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VIRGINIA P.,<br><br>    Defendant and Appellant. | (Super. Ct. No. J513950C) |

APPEAL from a judgment of the Superior Court of San Diego County, Michael J. Martindill, Referee.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, Patrice Plattner-Grainger and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

This appeal challenges the adequacy of notice provided under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1921 et seq.) in a juvenile dependency proceeding in which the mother,

Virginia P., asserts that her infant daughter, Athena Q., may have Indian heritage. Virginia claimed to have Cherokee heritage, and specified that "[Muscogee] is the name of the tribe."[1] The San Diego County Health and Human Services Agency (Agency) served ICWA notices on all federally recognized Cherokee tribes and also on the only federally recognized tribe with Muscogee in its name. When none of those tribes claimed Athena as a member, the trial court made a finding that the ICWA did not apply. Virginia asserts for the first time on appeal that the trial court's finding is erroneous because the Agency "failed to notice all the Muscogee Indian Tribes." Virginia identifies four additional federally recognized tribes that she contends are affiliated with the Muscogee Tribe. We affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND[2]

On January 24, 2013, the Agency filed a petition under Welfare and Institutions Code section 300, subdivision (b),[3] on behalf of newborn Athena. The petition alleged that when Athena was born, she tested positive for amphetamines and opiates, and subsequently suffered from withdrawal symptoms. The petition further alleged that Athena's mother, Virginia, tested positive for amphetamine at the time of Athena's birth and admitted to having used drugs and

---

[1]     For purposes of accuracy and consistency, we have changed references in the record from "Muskogee" to "Muscogee" because that is how the name of the tribe appears on the tribe's letterhead (in record) and in the United States Department of the Interior's (Department of Interior) list of federally recognized Indian tribes. (77 Fed.Reg. 47871 (Aug. 10, 2012).)

[2]     Because this appeal relates only to compliance with the ICWA notice provisions, we limit the summary of facts to those that are relevant to this issue. (E.g., *In re A.G.* (2012) 204 Cal.App.4th 1390, 1394).

[3]     All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

2

receiving no prenatal care during the pregnancy. The petition concluded there was a substantial risk that Athena would suffer serious physical harm or illness absent judicial intervention.

The court held a detention hearing on January 28, 2013. Both Virginia and Christian F., Athena's presumed father, were present. At the hearing, Virginia's counsel stated that Virginia "indicates she may have Native American heritage" and "has a relative who is a registered member of the [Muscogee] Tribe out of Oklahoma." The court ordered Virginia to fill out the Judicial Council form titled "Notice of Child Custody Proceeding for Indian Child" (form ICWA-030), which the court characterized as "[indicating] who the relatives are who might have Native American heritage so we can make sure and notice the [Muscogee] Tribe." Christian also indicated that he might have Native American heritage. The court ordered the Agency to notice the Muscogee tribes and the Bureau of Indian Affairs with any information provided by Virginia and Christian. The court ordered Athena detained and set a jurisdictional hearing.

As of the February 20, 2013 jurisdictional hearing, Virginia had not provided a completed form ICWA-030 to the Agency's social worker. The court continued the jurisdictional hearing to March 5, 2013.

Virginia still had not completed the form ICWA-030 by the March 5 hearing. She estimated that she needed another week "to investigate her ancestry to be able to fully provide all of the information needed . . . ." The court directed Virginia to complete the form before the next hearing.

At the next hearing, an April 4 settlement conference, Virginia advised the court that she "was not able to get [the form ICWA-030] in yet." The court responded that it was "absolutely urgent" that Virginia complete the form, and ordered that she do so by April 10. The court set a contested adjudication and disposition hearing for April 15.

3

Virginia did not provide the Agency with a completed form ICWA-030 until the day of the April 15 hearing.[4]  Consequently, the Agency asked the court to make a true finding on the petition, but to continue disposition three to four weeks so that the Agency could comply with the ICWA noticing requirements in the meantime.  The court agreed with the Agency's request and proceeded to make a true finding on the petition and order Athena detained at a foster home.  The court set a disposition hearing for May 7, 2013.

The Agency submitted an addendum report in connection with the May 7 disposition hearing.  Attached to this report were copies of certified mailings that the Agency had sent to three Cherokee tribes:  (1) the Cherokee Nation of Oklahoma, (2) the Eastern Band of Cherokee Indians, and (3) the United Keetoowah Band of Cherokee.  The report also included a response from the United Keetoowah Band of Cherokee Indians indicating that Athena is not a descendant of any enrolled member of that tribe.

At the outset of the May 7 hearing, the court asked the Agency why it had sent notices to the Cherokee tribes when Virginia had stated at an earlier hearing that she believed she had Muscogee heritage.  Virginia clarified that "[Muscogee] is the name of the tribe, then they are Cherokee Indians."  Her counsel pointed out that the form ICWA-030 that the Agency sent stated that the tribal membership of Virginia's great-aunt and great-uncle were "unknown" when, in fact, Virginia believed that they were both registered members of "the [Muscogee] Tribe."  The court ordered the Agency to send follow-up letters to the Cherokee tribes with the updated information regarding Virginia's relatives, and set a follow-up hearing on the ICWA issue for June 20.  The

---

4      We deny the Agency's untimely, opposed motion to augment the record with additional evidence, i.e., an addendum report to which the form ICWA-030 filled out by Virginia is attached.  The additional evidence is not necessary to our decision.

4

court proceeded to declare Athena a dependent, placed her in licensed foster home care, denied reunification services, and scheduled a hearing under section 366.26 to select and implement a permanent plan.

The Agency submitted another addendum report in connection with the June 20 hearing. That report showed that the Agency had sent the updated information not only to the three Cherokee tribes, but also to the Muscogee (Creek) Nation. The report included a response from the Muscogee (Creek) Nation indicating that the tribe did not consider Athena to be an Indian child. Accordingly, the Agency asked the court to find that the ICWA did not apply.

At the June 20 hearing, the court received the addendum report in evidence. Virginia was not present, but was represented by counsel who stated, "[o]n behalf of mother, I believe she does maintain that she still has Indian ancestry; however, she did provide all information that she had to the agency in the [form ICWA-030] and she did . . . review and confirm the correct information." The court found that it did not have reason to know that Athena is an Indian child and, therefore, found that the ICWA did not apply. The court added that its finding was without prejudice "should additional information become available . . . ."

Virginia timely appealed.

II

DISCUSSION

Virginia contends that the trial court's finding that the ICWA does not apply is erroneous because the Agency notified one, but not all, of the Muscogee Indian Tribes. She contends that this error was prejudicial because it deprived those tribes that did not receive notice of the opportunity to search their tribal registries and, if appropriate, to intervene. We disagree.

5

A.     *Summary of Applicable Legal Principles*

Congress enacted the ICWA to cure "abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." (*Mississippi Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 32.) The ICWA provides that, "[i]n any involuntary proceeding in a State court, where the court *knows or has reason to know* that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912, italics added.)

The ICWA defines an Indian child as "any unmarried person who is under age [18] and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see also Welf. & Inst. Code, § 224.1, subds. (a) & (b).) An " 'Indian tribe' " is defined as "any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the Interior] because of their status as Indians. . . ." (25 U.S.C. § 1903(8); Welf. & Inst. Code, § 224.1, subd. (a).) The Department of the Interior publishes in the Federal Register a list of "Indian Entities Recognized and Eligible To Receive Services From the Bureau of Indian Affairs." (77 Fed.Reg. 47868 (Aug. 10, 2012).)

"California law implements the ICWA by requiring that notice be sent to the minor's parents and the minor's tribe whenever 'it is *known or there is reason to know* that an Indian child is involved . . . .' " (*In re C.B.* (2010) 190 Cal.App.4th 102, 140, quoting § 224.2, subd. (a).) Notice must be given to "all tribes of which the child may be a member or eligible for

6

membership . . . ." (§ 224.2, subd. (a)(3).) The notice must be sent "to the tribal chairperson, unless the tribe has designated another agent for service." (§ 224.2, subd. (a)(2).) The Department of the Interior publishes in the Federal Register a list of "Designated Tribal Agents for Service of Notice," together with their addresses. (77 Fed.Reg. 45816 (Aug. 1, 2012).)

"The trial court's finding that ICWA notice was adequate is reviewed for substantial evidence." (*In re J.T.* (2007) 154 Cal.App.4th 986, 991.)

B.    *Analysis*

Virginia claims to have Native American heritage through the Muscogee Tribe, which she states are Cherokee Indians. The Department of the Interior's list of federally recognized Indian tribes identifies three Cherokee tribes[5] and one tribe with Muscogee in its name.[6] The Agency sent ICWA notices to each of these four tribes. Thus, preliminarily, it appears that the Agency satisfied its ICWA notice obligations.

Virginia claims for the first time on appeal that if the Agency had done "a simple Google search," it would have learned (1) that the Muscogee and Cherokee tribes are different entities,[7]

---

[5]    The three federally recognized Cherokee tribes are the Cherokee Nation, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians in Oklahoma. (77 Fed.Reg. 47869, 47872 (Aug. 10, 2012).)

[6]    The only federally recognized Indian tribe with Muscogee in its name is the Muscogee (Creek) Nation. (77 Fed.Reg. 47871 (Aug. 10, 2012).)

[7]    Although it was Virginia who first stated that the Muscogee and Cherokee tribes are affiliated, we decline the Agency's invitation to invoke the discretionary doctrines of waiver and invited error. The ICWA " ' "notice requirements serve the interests of the Indian tribes 'irrespective of the positions of the parents' and cannot be waived by the parent." ' " (*In re Alice M.* (2008) 161 Cal.App.4th 1189, 1195 (*Alice M.*), quoting *In re Justin S.* (2007) 150 Cal.App.4th 1426, 1435.)

and (2) that there are four additional Muscogee tribes that the Agency did not notify.[8]  We reject this claim, for several reasons.

First, although the four additional tribes that Virginia references are federally recognized, the only evidence that she offers in support of her claim that they are affiliated with Muscogee Indians is a citation to the Wikipedia Web site.  Many courts have questioned the reliability of Wikipedia entries.  (See *Crispin v. Christian Audigier, Inc.* (C.D.Cal. 2010) 717 F.Supp.2d 965, 977, fn. 19 [collecting cases].)  In any event, we need not reach that evidentiary issue because Virginia has "cited no authority for the proposition that evidence based on Internet site information may be considered for the first time on appeal.  For example, [she has] not requested that we take judicial notice of this evidence, nor do we see how judicial notice would be proper." (*In re K.P.* (2009) 175 Cal.App.4th 1, 5 [declining to consider Internet information regarding tribal affiliations].)  Accordingly, in this appeal, we do not consider the substantive content of the Wikipedia entries that Virginia cites.

Second, Wikipedia aside, Virginia could have crafted a similar argument with citations to admissible references.  The Department of the Interior's list of Designated Tribal Agents for Service of Notice groups tribes by region and *by tribal affiliation*.  (77 Fed.Reg. 45816 (Aug. 1, 2012).)  The entries listed under the Cherokee tribal affiliation include only the three Cherokee tribes that the Agency notified.  (*Id*. at p. 45838.)  The list does not have a tribal affiliation grouping for Muscogee Indians, (*id*. at p. 45846), but does have one for Creek Indians, and *that* entry lists the Muscogee (Creek) Nation and the four additional tribes that Virginia now contends the Agency should also have notified.  (*Id*. at p. 45840.)  In light of this, a charitable interpretation

---

8       The four additional tribes are (1) the Alabama-Quassarte Tribal Town, (2) the Kialegee Tribal Town, (3) the Poarch Band of Creeks, and (4) the Thlopthlocco Tribal Town.

of Virginia's statement of her possible heritage would be that "[Muscogee] is the name of the tribe, then they are [*Creek*] Indians." But even if we were to interpret Virginia's contention concerning her possible tribal heritage in this manner, we would not conclude that the Agency was required to notify the four additional tribes. While Virginia may have been mistaken about the overarching tribal affiliation, i.e., stating that the affiliation was Cherokee rather than Creek, the record does not indicate that she ever wavered in her assertion of the name of the constituent tribe—Muscogee.

Based on this record, we are unmoved by Virginia's characterization of the Agency's position as being that "unless a parent identifies a specific Indian tribe or tribal affiliation, an agency is not obligated to communicate with all the constituent tribes—any branch will suffice." Although a similar argument carried the day in *Alice M.*, it is inapplicable here. In *Alice M.*, the mother identified her daughter's possible heritage as "Apache and/or Navajo." (*Alice M.*, *supra*, 161 Cal.App.4th at p. 1198.) The agency failed to adequately notify three specific Apache tribes. (*Id*. at p. 1201.) That failure led the court to conclude that "[i]n a case such as this, the language of subdivision (a)(3)" of section 224.2—requiring that notice " 'be sent to all tribes of which the child may be a member' "—"must be construed as requiring notice to *all* federally recognized tribes within the general umbrella identified by the child's parents or relatives." (*Alice M.*, at p. 1202; see also *In re J.T.*, *supra*, 154 Cal.App.4th at pp. 989, 993- 994 [where mother stated she had "Sioux and Cherokee Indian ancestry," agency was required to notify "all federally recognized Sioux and Cherokee tribes"].) The court reasoned that the mother's "omission of more detailed information, such as specific tribal affiliation or tribal roll number, [did] not negate [her] stated belief that Alice may be a member of a tribe or eligible for membership." (*Alice M.*, at p. 1198.)

Our case presents the inverse of *Alice M.*:  Virginia knew the "specific tribal affiliation"—Muscogee—but not the name of "the general umbrella"—Cherokee (or Creek, as the case may be).  (*Alice M.*, *supra*, 161 Cal.App.4th at pp. 1198, 1202.)  We therefore conclude that *Alice M.* is distinguishable.

Virginia also contends that "there is no requirement that a tribal name explicitly contain a reference to the claimed Native American ancestry of its members."[9]  We find this argument inapplicable because Virginia specifically identified Muscogee as "the name of the tribe," and there is one federally recognized Indian tribe with Muscogee in its name—the Muscogee (Creek) Nation.  (77 Fed.Reg. 47871 (Aug. 10, 2012).)

III

DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:

McDONALD, Acting P. J.

IRION, J.

---

[9]    Virginia identifies as examples tribes with names such as "Arctic Village" and "Beaver Village."  (See 77 Fed.Reg. 47872 (Aug. 10, 2012).)

10