Filed 2/24/22  In re N.M. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re N.M., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E077488 |
| Plaintiff and Respondent, | (Super.Ct.No. J289645) |
| v. | OPINION |
| A.L., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Steven O'Neill, Interim County Counsel, Kaleigh Ragon, Deputy County Counsel for Plaintiff and Respondent.

1

A.L. (Mother) is the mother and J.M.[1] is the father of N.M. (female, born April 2019; Minor). On appeal, Mother contends that San Bernardino County Children and Family Services (CFS) and the juvenile court failed to comply with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901). For the reasons set forth *post*, we conclude the juvenile court properly found that the noticing provisions of ICWA did not apply to this case and affirm.

## FACTUAL AND PROCEDURAL HISTORY

### A.    DETENTION

On June 21, 2021, CFS responded to an immediate response referral regarding Minor. The reporting party stated that they were called to the scene due to Minor allegedly hemorrhaging, and Mother disclosing her belief that Minor had been sexually molested for over a year. Mother reported that Minor had a red and swollen genital area and bloody spotting in her diaper. The reporting party stated that Minor's genital area did appear red and swollen, but there was no obvious bleeding or other external injury. Minor, accompanied by Mother, was transported to the hospital for a medical examination. Upon examination of Minor, the medical staff did not find any evidence of sexual abuse. The reporting party also noted that the Sheriff's department had received numerous calls prior to this incident from Mother's family members alleging that Mother was having mental health breakdowns and Minor was not safe in Mother's care.

---

[1]  J.M. is not a party to this appeal.

2

On the same day, a social worker spoke with the maternal grandmother (MGM). MGM stated that Mother was homeless, on drugs, and had mental health issues. MGM reported Mother's paranoid and delusional behavior because she was concerned about Minor. MGM further provided that Mother was aggressive, had personality changes, and would yell and scream at Minor saying that Mother did not know who Minor was or where she came from. MGM confirmed that law enforcement had been to the home numerous times due to Mother's irrational behavior, and that Mother's behavior had become even more erratic. MGM additionally stated that Minor was always welcome in her home but Mother was not because of her erratic behavior and mood swings.

The social worker also spoke with Mother's aunt, R.S. (Minor's great maternal aunt, hereafter GMA). GMA stated that Mother had mental health problems and had been diagnosed as bipolar and schizophrenic. GMA reported that Mother would hear voices and stated she was afraid Mother would hurt herself or Minor. GMA also stated that a couple of days prior, she had taken Mother to be evaluated for her mental health and Mother was prescribed two medications. GMA reported that Mother was supposed to take only two pills, but Mother proceeded to take all her pills at the same time. Furthermore, GMA stated that Mother drank a lot of alcohol and used methamphetamines.

The social worker met with Mother and Minor. Mother shared that she was homeless. She also admitted to using methamphetamines two days prior and confirmed that she was diagnosed with schizophrenia; she continued to hear voices. Mother believed her relatives were trying to kill her and put things in her head to make her think

3

she was crazy. Mother stated she did not know where J.M. was; he did not provide support for Minor. Considering Mother's mental health issues, drug use, and homelessness with Minor, the social worker determined that Minor would not be safe if left in Mother's care.

On June 22, 2021, CFS obtained a detention warrant to remove Minor from Mother's care. An emergency home assessment of MGM was completed and Minor was placed with MGM.

On June 24, 2021, CFS filed a Welfare and Institutions Code[2] section 300 petition on behalf of Minor based on subdivisions (b)(1), and (g), due to Mother's substance abuse, mental illness, and failure to provide care.

At the detention hearing on June 25, 2021, Mother's counsel denied the allegations in the petition. Mother submitted her (1) "PARENT: Family Find and ICWA Inquiry" form indicating that she does not know if she has Native American ancestry; and (2) ICWA-020 form indicating that she may have Indian ancestry. The juvenile court inquired about Mother's possible Indian ancestry as follows:

"THE COURT: [Mother], you indicate [Minor] may have Indian ancestry; is that right?

"THE MOTHER: May have, yes.

"THE COURT: Why do you think you have that?

"THE MOTHER: I know my grandmother has some Indian, and her dad.

---

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

"THE COURT:        Do you know what tribe?

"THE MOTHER:     I do too.

"THE COURT:        Are you an enrolled tribe member?

"THE MOTHER:     No, I'm not.

"THE COURT:        Have you ever lived on a reservation?

"THE MOTHER:     No.

"THE COURT:        Has [Minor]?

"THE MOTHER:     No."

The juvenile court then ordered Mother to drug and alcohol test that day. The court found a prima facie case that Minor came within section 300, and a prima facie case for detention. The court set a jurisdiction and disposition hearing for July 16, 2021.

B.        JURISDICTION/DISPOSITION

In the July 16, 2021, jurisdiction and disposition report, CFS reported that Mother's grandmother (MGGM) stated that her maternal great-grandmother told MGGM that they were affiliated with the Apache Tribe. On June 25, 2021, a social worker attempted to contact the Apache Nation for additional information regarding family affiliation. As of the writing of the report, however, the tribe had not gotten back to the social worker. The report also noted that on June 26, 2021, GMA stated that in October of 2019, she submitted her DNA for an ancestry analysis and the results revealed "a little bloodline for several tribes." MGA also stated that she did not believe they were federally recognized tribes. That same day, the social worker against contacted MGGM, collected the family information and submitted an ICWA 030 form.

5

CFS documented the erratic and irrational behavior of Mother throughout the reporting period, which included (1) accusing a social worker of kidnapping Minor, (2) going to relatives' homes, kicking doors, and harassing family members on numerous occasions; and (3) going to the CFS office appearing under the influence and screaming at social workers on numerous occasions.

The jurisdiction and disposition report also noted that Mother was not interested in receiving any services from CFS or elsewhere. CFS recommended that the juvenile court find the allegations in the petition true, sustain the petition, remove Minor, and place Minor in out-of-home care.

At the hearing on July 16, 2021, the matter was continued to July 23, 2021, for a contested hearing.

At the hearing on July 23, 2021, Mother was not present. Mother's counsel requested a brief continuance to put the matter to second call so Mother could be present. The court denied the request and noted that Mother was ordered to be at the hearing and warned what would happen if she did not appear. Counsel for CFS requested that the detention report, and the jurisdiction and disposition report be entered into evidence. After hearing argument from counsel, the court found the allegations in the petition true, declared Minor a dependent of the court, and removed her from Mother's care.

Thereafter, the juvenile court found that ICWA did not apply and scheduled a six-month review hearing for January 24, 2022.

On July 30, 2021, defendant filed a timely notice of appeal challenging the court's order removing Minor from her care and taking jurisdiction of Minor. Mother's sole argument on appeal is that the court's ICWA findings should be reversed.

**DISCUSSION**

A.  THE JUVNEILE COURT PROPERLY FOUND THAT ICWA DID NOT APPLY

Mother contends that "the Juvenile Court's ICWA findings made at the Jurisdiction and Disposition hearing must be reversed because the Agency did not comply with ICWA's noticing requirements and substantial evidence did not support the court's findings ICWA did not apply." After reviewing the record, find that the juvenile court properly found that ICWA did not apply to this case.

1.  *LEGAL BACKGROUND*

ICWA, enacted in 1978, is a federal law, which is recognized and applied in California. (See, e.g., *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1197.) Its purpose is to protect the interests of Indian children and to promote the stability and security of Indian tribes and families. (25 U.S.C. § 1902; see, e.g., *In re Elizabeth W.* (2004) 120 Cal.App.4th 900, 906.) The law was adopted "in response to concerns ' "over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." ' [Citations.] [The] ICWA addresses these concerns by establishing 'minimum Federal standards for the removal of Indian children from their families and the

7

placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.' " (*In re Abbigail A.* (2016) 1 Cal.5th 83, 90.)

"In 2006, California adopted various procedural and substantive provisions of ICWA.  [Citation.]  In 2016, new federal regulations were adopted concerning ICWA compliance.  [Citation.]  Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements.  [Citations.]  Those changes became effective January 1, 2019 . . . , and govern here." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048, fn. omitted.)  The new statute defines the actions necessary to determine a child's possible status as an Indian child.

ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. §1903(4); accord, § 225.1, subd. (a) [adopting the federal standard].)  *Being an 'Indian child' is thus not necessarily determined by the child's race, ancestry, or 'blood quantum,' but depends rather 'on the child's political affiliation with a federally recognized Indian Tribe.' "* (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882 (*Austin J.*), italics added.)

"ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child.  [Citation.]  Federal regulations implementing ICWA, however, require that state courts 'ask each participant

in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child.' [Citation.] The court must also 'instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.' " (*Austin J.*, *supra*, 47 Cal.App.5th at pp. 882-883.)

Since states may provide "a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under" ICWA (25 U.S.C. § 1921), under California law, the court and the county welfare department have an "affirmative and continuing duty to inquire" whether a child in dependency proceedings "is or may be an Indian child." (§ 224.2, subd. (a) [the duty to inquire whether a child is or may be an Indian child begins with the initial contact]; Cal. Rules of court, rule 5.481(a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 14.)

Initially, the county welfare department must ask the "child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) At the parties' first appearance before the juvenile court, the court must ask "each participant present in the hearing whether the participant knows or has *reason to know* that the child is an Indian child" (§ 224.2, subd. (c), italics added), and "[o]rder the parent . . . to complete Parental Notification of Indian Status ([Cal. Judicial Council] form ICWA-020)." (Cal. Rules of Court, rule 5.481(a)(2)(C), italics omitted.)

When there exists a *reason to believe* that an Indian child is involved, the social worker must "make further inquiry regarding the possible Indian status of the child." (§ 224.2, subd. (e).) "The Legislature, which added the '*reason to believe*' threshold for making a further inquiry in 2018, did not define the phrase. When that threshold is reached, the requisite 'further inquiry' 'includes: (1) interviewing the parents and extended family members; (2) contacting the BIA and State Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe.' " (*Austin J.*, *supra*, 47 Cal.App.5th at p. 883, italics added; see § 224.2, subd. (e)(1)-(3); Cal. Rules of Court, rule 5.481(a)(4)(A)-(C).)

"In addition to the inquiry that is required in every dependency case from the outset and the 'further inquiry' required under California law when there is a '*reason to believe*' an Indian child is involved, a third step—notice to Indian tribes—is required under ICWA and California law if and when 'the court knows or has *reason to know* that an Indian child is involved . . . .' [Citations.] "The duty to provide notice is narrower than the duty of inquiry. Although the duty of inquiry applies to every 'child for whom a petition under Section 300, 601, or 602 may be or has been filed' [citation], and the duty of further inquiry applies when there is a '*reason to believe* that an Indian child is involved in a proceeding' [citation], the duty to provide notice to Indian tribes applies only when one knows or has a '*reason to know*. . . an Indian child is involved,' and only 'for hearings that may culminate in an order for foster care placement, termination of

10

parental rights, preadoptive placement, or adoptive placement.' " (*Austin J.*, *supra*, 47 Cal.App.5th at pp. 883-884, italics added.)

Effective January 1, 2019, the Legislature redefined the "*reason to know*" requirement that triggers the duty to give notice of the proceedings to Indian tribes. (*In re A.M.* (2020) 47 Cal.App.5th 303, 316 (*A.M.*), italics added; see § 224.3; Stats. 2018, ch. 833, §§ 4-7.) Before January 1, 2019, a "*reason to know*" could be based on "*information suggesting the child is a member of a tribe or eligible for membership in a tribe* or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (Welf. & Inst. Code, former § 224.3, subd. (b)(1), italics added; Stats. 2006, ch. 838, § 32.) As of January 1, 2019, the *mere suggestion of eligibility for membership* as to the child—*or the mere suggestion of membership as to the parents, grandparents*, *or great-grandparents—no longer provides a reason to know that the court is dealing with an Indian child*. (§ 224.2, subd. (d).) Now, the amended statute declares that there is *reason to know* an Indian child is involved if, for instance, "[a] person having an interest in the child . . . informs the court that the child is an Indian child." (§ 224.2, subd. (d)(1).) The changes to the statute conform the definition of "*reason to know*" to the definition in federal regulations promulgated in 2016. (25 C.F.R. § 23.107(c); see *A.M.*, at p. 316.)

"In defining the 'reason to know' standard as a reason to know that a child '*is* an Indian child,' the BIA expressly denied requests for more inclusive language, such as, ' "is *or could be* an Indian child" ' or ' "*may be* an Indian child." ' [Citation.] In rejecting the broader phrases, the BIA pointed to concerns that such language would

11

cause 'undue delay, especially when a parent has only a vague notion of a distant [t]ribal ancestor.' [Citations.] Indeed, tribal ancestry is not among the criteria for having a reason to know the child is an Indian child." (*Austin J.*, *supra*, 47 Cal.App.5th at p. 885.)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence. [Citations.] But where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.)

### 2.     *ANALYSIS*

In this case, at the initial inquiry stage, Mother stated that she may have Indian ancestry but could not identify the tribe. Thereafter, CFS further inquired about Minor's Indian ancestry by interviewing MGGM and MGA. MGGM told the social worker her great-great grandmother told MGGM that they were affiliated with the Apache Tribe. MGA told the social worker that in October of 2019, MGA send her DNA sample to ancestry.com. The results showed a little bloodline for several tribes. Although MGA did not provide any tribe names, she stated that she did not believe the tribes are federally recognized tribes. Based on MGA's information, the social worker contacted MGGM again to collect additional information that may be needed for notice under ICWA. The social worker also initiated contact via telephone with the Apache Nation but did not hear back. Moreover, although the jurisdiction and disposition report stated that an ICWA-030 form was submitted, there was no ICWA-030 form included in the record. No written inquiry was sent to the Apache Nation or BIA. Furthermore, in the jurisdiction and disposition report, CFS indicated that Minor "may come under the provisions of the

12

Indian Child Welfare Act," and that "Noticing requirements under ICWA have been initiated."

Based on the above, the juvenile court found that the further inquiry conducted by CFS was adequate and proper. Prior to making this finding, the juvenile court reviewed the report and stated:

"Page 2 indicates the maternal great-grandmother says that her maternal great-great grandmother—so way, way back, told her they were affiliated with the Apache Tribe. And then the maternal aunt took a DNA test which case law establishes is not a basis to believe a child is an Indian child. [¶] Mom indicated she was not enrolled. From the interviews with the maternal great-grandmother, it does not appear that anyone close to the mother is an enrolled tribe member, nor has she lived on a reservation—the mother that is. [¶] It looks like if there is Indian ancestry, it's way, way back. And nobody has indicated that the child is eligible for enrollment either. But the Department to continue to inquire. [¶] So at this point I'm going to find that the child does not come under ICWA and strike the noticing requirement."

Mother claims that "the court improperly found ICWA did not apply because the child's affiliation with the Apache Tribes was 'way, way back,' and struck the noticing requirements. However, only the tribe, not the juvenile court, has the authority to determine who is a member. By not requiring CFS to formally notice the tribes, the juvenile court prevented the tribes from determining whether the minor was an Indian child."

13

We disagree with Mother.  In her appeal, Mother has failed to address the revised criteria for evaluating whether CFS had a *reason to believe* that an Indian child was involved.  (§ 224.2, subd. (e).)  Here, the court ultimately found that ICWA does not apply.  This finding implies that a duty of inquiry under California law had been satisfied.  Sufficient evidence supports the court's finding.

In this case, as noted above, CFS collected additional familial information and initiated contact with the identified tribe.  The information revealed during this additional inquiry did not establish any further "reason to believe" Minor is an Indian child.  Minor's relatives indicated that Minor's great-great-great-great-great grandmother may have belonged to the Apache tribe and MGA's DNA test results revealed Native American ancestry with no identification to a tribe or tribes.  These facts, however, are insufficient to support a "reason to believe" that Minor is an Indian child as defined in ICWA.  At most, it suggests a mere possibility of Indian ancestry.  But, as stated in *Austin J.*, "Indian ancestry, heritage, or blood quantum, however, is not the test; being an Indian child requires that the child be either a member of a tribe or a biological child of a member.  [Citation*s*.]  Being a member of a tribe depends 'on the child's political affiliation with a federally recognized Indian Tribe,' not the child's ancestry.  [Citations.]  Consequently, 'many racially Indian children' do not fall within ICWA's definition of an Indian child, while others may be Indian children even though they are 'without Indian blood.'  [Citation.]  Indian ancestry, without more, does not provide *a reason to believe* that a child is a member of a tribe or is the biological child of a member." (*Austin J.*, *supra*, 47 Cal.App.5th at pp. 888-889, italics added; see *In re Jeremiah G.* (2009) 172

14

Cal.App.4th 1514, 1520 ["if the child is not a tribe member, and the mother and the biological father are not tribe members, the child simply is not an Indian child"].)

Because there was insufficient evidence to provide a reason to believe that Minor or her maternal relatives are members of, or eligible for membership in, an Indian tribe, the statute imposed no duty to make further inquiry. The juvenile court, therefore, properly found that the noticing provisions of ICWA did not apply to this case.

## DISPOSITION

The juvenile court's findings and orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.

15