Filed 7/16/14  In re D.S. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re D.S., a Person Coming Under the Juvenile Court Law. | |
| R.S.,<br><br>       Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>       Respondent;<br><br>ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>       Real Party in Interest. | A141677<br><br>(Alameda County<br>Super. Ct. No. OJ13022074) |

Petitioner R.S. (Mother), mother of six-month-old D.S., seeks review by extraordinary writ, pursuant to California Rules of Court, rule 8.452,[1] of the juvenile court's findings and orders, in which the court bypassed reunification services and set the matter for a permanency planning hearing, pursuant to Welfare and Institutions Code section 366.26.[2]  Mother contends (1) substantial evidence does not support the juvenile court's finding that she failed to make reasonable efforts to alleviate the problems that led to the removal of D.S.'s siblings, and (2) the juvenile court erred when it found that the

_____

[1]  All further rule references are to the California Rules of Court.

[2]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

1

Alameda County Social Services Agency (Agency) had complied with the notice requirements of the Indian Child Welfare Act (ICWA). We shall affirm the juvenile court's orders.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 10, 2013, the Agency filed an original petition alleging that D.S. came within the provisions of section 300, subdivisions (b), (g), and (j). Specifically, the petition alleged that D.S. was at risk of harm due to mother's mental illness. Mother had been placed on a "5250 hold"[3] at a hospital in Berkeley, where she gave birth to D.S. Mother was psychotic and had disorganized thinking, and was given Haldol, a psychotropic medication. The petition further alleged that the identity of D.S.'s father was unknown, and that her two siblings had been permanently planned after the parents failed to reunify. One sibling had been adopted and the other was in a legal guardianship.

In the December 11, 2013 detention report, the social worker related that Mother remained on a 5250 hold at the hospital, and the social worker had trouble communicating with her "since she was very incoherent and disorganized in her thought process." A doctor had reported that Mother, who had a history of psychosis and schizophrenia, was "grossly psychotic" and remained "extremely psychotic and disorganized." The social worker also stated that "[t]he Indian Child Welfare Act may apply[;] the mother was not cognitively able to provide information regarding ICWA." The Agency recommended that D.S. be detained. On December 11, the juvenile court ordered D.S. detained.

In the December 27, 2013 jurisdiction/disposition report, the social worker related that she had spoken with Mother's case manager, who said that Mother was receiving supplemental security income (SSI) and had stable housing. Mother had been in contact with the case manager, but had missed an appointment the previous month with her

---

[3] Section 5250 permits the involuntary confinement of a person who was already detained for 72 hours under section 5150 for up to 14 additional days of intensive treatment related to, inter alia, a mental disorder, if that person is "a danger to others, or to himself or herself, or gravely disabled." (§ 5250, subd. (a).)

psychiatrist. The social worker again related that she was unable to obtain information about the applicability of ICWA due to Mother's cognitive state. The report included copies of minute orders from 2007 and 2008, reflecting that Mother's parental rights were terminated with respect to D.S.'s siblings and that one of the two siblings was an Indian child. The order for the other sibling stated that ICWA notice had been provided in that case.

The social worker recommended that reunification services be bypassed due to Mother's failure to reunify with her other children. He explained that Mother's history of mental illness, which had not been successfully treated, prevented her from being able to care for D.S., and that one of D.S.'s siblings was removed for "almost identical" reasons.

In an addendum report filed on January 29, 2014, the social worker reported that Mother was residing at a rehabilitation center and that D.S. was doing well in his new foster home. Mother had had a supervised visit with D.S., during which she was appropriate and appeared to be heavily medicated. The report also indicated that, on January 28, 2014, Mother had stated that "she had no Indian Ancestry."

Also on January 29, 2014, at the request of Mother's counsel, the court conducted a hearing to determine whether a guardian ad litem should be appointed. The court determined that Mother lacked the ability to understand the proceedings and would be ineffective in assisting her attorney, and therefore appointed a guardian ad litem.

In a memorandum prepared for the pending jurisdiction/disposition hearing and filed on March 13, 2014, the social worker related that Mother had attended another visit with D.S.; she was appropriate during the visit, but "was highly sedated." Mother had said that she would be leaving the rehabilitation center and moving back to her old apartment on March 14. The social worker also stated that ICWA "does not apply."

At the March 13, 2014 jurisdiction/disposition hearing, William Hayes, the social worker assigned to the case, testified that Mother had received reunification services in both of the cases involving D.S.'s siblings, and that her parental rights were ultimately terminated as to both children. Hayes also testified that Mother had been diagnosed with paranoid schizophrenia. Her most recent hospitalization resulted from her being

3

"delusional and grossly psychotic" around the time she gave birth to D.S. Over the past six years, since termination of her parental rights with respect to her other two children, Mother had been hospitalized "a significant number of times." Mother had received psychiatric care over the years, and at one time had been taking Haldol, which she was currently taking again. Hayes had not spoken to Mother's psychiatrist, but had learned from her case manager that Mother had missed an appointment with the psychiatrist the previous month. The case manager had helped Mother keep up with her appointments and obtain housing. Mother had an apartment and was receiving SSI.

At the conclusion of the hearing, the juvenile court took jurisdiction over D.S. and adopted the Agency's recommendations regarding disposition. The court, however, continued disposition for 30 days because, on the day of the hearing, Mother had submitted an ICWA-020 form, "Parental Notification of Indian Status," in which she indicated possible Native American heritage. The court directed the Agency to provide ICWA notice, as required.

At the April 21, 2014 continued disposition hearing, after the Agency confirmed that it had completed the required ICWA noticing, the court found that notice had been given as required by law and adopted the Agency's recommendations, declaring D.S. a dependent of the court, denying reunification services to Mother, and setting the matter for a section 366.26 hearing on August 14, 2014.

On April 24, 2014, Mother filed a notice of intent to file writ petition.[4]

## DISCUSSION

### I. *Order Bypassing Reunification Services*

Appellant contends substantial evidence does not support the juvenile court's finding that Mother failed to make reasonable efforts to alleviate the problems that led to the removal of D.S.'s siblings.

---

[4] On June 2, 2104, Mother filed a petition seeking review of the juvenile court's orders and requesting a stay of the section 366.26 hearing. On June 4, 2014, we denied Mother's request for a stay pending determination of this petition.

4

## A. *Trial Court Background*

At the conclusion of the March 13, 2014 jurisdiction/disposition hearing, before it ordered disposition continued pending the Agency's compliance with ICWA notice requirements, the court explained the reasons it intended to deny Mother reunification services: "As to the allegation pursuant to section 361.5[, subdivision] (b)(10) and (b)(11) [authorizing bypass of reunification services when parent failed to reunify with child's sibling and parent "has subsequently not made a reasonable effort to treat the problems that led to the removal of the sibling"], I want the record to specifically reflect that I've considered the mother's multiple hospitalizations, the psychotic state she experienced even at Herrick Hospital at or around the time of [D.S.'s] birth, evidence of parallel circumstances between the instant case and that of the sibling closest in age, as well as the pattern that appears to exist[] over extended periods of time in that parental rights were terminated for the siblings in 2005 [*sic*] and 2008 respectively.

"I've weighed these circumstances and others against evidence that the mother does receive SSI and has a source of income and pays I believe . . . $300 for an apartment that she has been able to maintain."

At the continued disposition on April 21, 2014, the court further explained the basis for its decision to bypass reunification services for Mother: "I find that there is clear and convincing evidence that reunification services should be denied to the mother. [¶] Pursuant to section 361.5, subdivision (b)(10), the court terminated reunification services for siblings of [D.S.] because the mother failed to reunify with those siblings after having been removed from the mother's custody [*sic*] and the mother has not subsequently made a reasonable effort to treat the problems that led to that removal.

"Also, pursuant to section 361.5, subdivision (b)(11), the parental rights of this same mother as to those same siblings were terminated and the mother has not subsequently made a reasonable effort to treat the problems that led to the removal of those siblings . . . or as to one sibling. Parental rights were only terminated as to one of the siblings. It was a legal guardianship for the other."

5

## B. *Legal Analysis*

"Ordinarily, when a child is removed from parental custody, the juvenile court must order services to facilitate the reunification of the family. (§ 361.5, subd. (a).) ' "Nevertheless, as evidenced by section 361.5, subdivision (b), the Legislature recognizes that it may be fruitless to provide reunification services under certain circumstances. [Citation.] Once it is determined one of the situations outlined in subdivision (b) applies, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources." ' [Citation.] An order denying reunification services is reviewed for substantial evidence. [Citation.]" (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914.)

Pursuant to section 361.5, subdivision (b)(10) and (b)(11), reunification services need not be provided to a parent who has failed to reunify with another child or whose parental rights were terminated if the juvenile court finds, by clear and convincing evidence, that the parent "has not subsequently made a reasonable effort to treat the problems that led to the removal of the sibling or half sibling of that child" from the parent.

"The reasonable effort requirement focuses on the extent of a parent's efforts, not whether he or she has attained 'a certain level of progress.' [Citation.] 'To be reasonable, the parent's efforts must be more than "lackadaisical or half-hearted." ' [Citations.] However, '[t]he "reasonable effort to treat" standard "is not synonymous with 'cure.' " ' [Citation.]" (*R.T. v. Superior Court*, *supra*, 202 Cal.App.4th at p. 914.)

As the appellate court in *R.T. v. Superior Court*, *supra*, 202 Cal.App.4th at pages 914-915 explained: "We do not read the 'reasonable effort' language in the bypass provisions to mean that *any* effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable. It is certainly appropriate for the juvenile court to consider the *duration, extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the *focus* of the inquiry, a parent's progress, or

6

lack of progress, both in the short and long term, may be considered to the extent it bears on the *reasonableness* of the effort made. [¶] Simply stated, although success alone is not the sole measure of reasonableness, the *measure* of success achieved is properly considered a factor in the juvenile court's determination of whether an effort qualifies as reasonable."

Here, Mother does not dispute that she failed to reunify with D.S.'s two older siblings or that her parental rights were terminated as to both children. (See § 361.5, subd. (b)(10) & (b)(11).) She argues, however, that the second prong of the analysis is not satisfied (see *ibid*.), asserting that the juvenile court improperly focused on her "apparent failure to successfully eradicate her mental health issues," rather than on "the reasonableness of her efforts." We disagree.

The evidence the court considered in finding a lack of reasonable efforts to treat the problems leading to D.S.'s removal includes the removal of D.S.' two siblings, in 2004 and 2007, respectively, from Mother's custody due to her inability to care for them. Shortly after each of their births, she was placed on an involuntary psychiatric hold, pursuant to section 5150, based on her symptoms of psychosis, delusions, and paranoia related to her paranoid schizophrenia. Though Mother was aware of her diagnosis of paranoid schizophrenia, she required involuntary psychiatric treatment after each child's birth because she had not been taking her psychotropic medication or receiving appropriate treatment. Mother received reunification services, but failed to reunify with either of D.S.'s older siblings.

Moreover, as Social Worker William Hayes testified at the disposition hearing, in the six years since Mother's parental rights had been terminated with respect to the second sibling, she had been hospitalized "a significant number of times," and was involuntarily hospitalized shortly before D.S.'s birth due to her "delusional and grossly psychotic" behavior. After D.S. was born, Mother's psychotic state led an examining psychiatrist to conclude that it was "quite impossible to imagine her providing for appropriate food, clothing, shelter for herself, let alone an infant." In addition, the evidence showed that Mother "had not been compliant with medication or counseling" to

7

address her mental illness. Although, after her most recent hospitalization, Mother was once again taking psychotropic medication at her residential treatment facility, the evidence of her multiple hospitalizations and non-compliance with treatment support the juvenile court's conclusion that "the *quality and quantity*" of her efforts were not reasonable. (*R.T. v. Superior Court*, *supra*, 202 Cal.App.4th at p. 914.)

The record also reflects that Mother had, with the assistance of a case manager, obtained housing, was receiving SSI, and had seen a psychiatrist, though she had missed her most recent appointment. As the juvenile court reasonably found, however, this evidence is not sufficient to counterbalance the strong evidence that Mother has not made a reasonable effort to treat the mental health problems that led to the removal of D.S.'s older siblings in strikingly similar circumstances. (See § 361.5, subd. (b)(10) & (b)(11).) It was Mother's mental health condition that led to her failure to reunify and the termination of her parental rights as to both of D.S.'s siblings, and the evidence simply does not show that the efforts Mother made in the years since termination were more than "half-hearted," i.e., that they amounted to a reasonable effort to treat that condition. (*Ibid.*; *R.T. v. Superior Court*, *supra*, 202 Cal.App.4th at p. 914; compare *In re Albert T.* (2006) 144 Cal.App.4th 207, 220-221 [court incorrectly focused on whether mother had in fact resolved problem that led to dependency rather than on extensive evidence of considerable efforts mother had made to resolve problem]; *Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 97 [by focusing on parents' lack of sufficient progress after 18 months of reunification services with older sibling, court seemingly ignored question of whether parents' efforts were reasonable as required by second prong section 361.5, subdivision (b)(10)].)

Substantial evidence supports the juvenile court's finding that Mother did not make a reasonable effort to treat the problems that led to removal of D.S.'s siblings. (§ 361.5, subd. (b)(10) & (b)(11).) Hence, the court properly denied Mother reunification services. (*Ibid.*)

## II.  *ICWA Notice*

Appellant contends the juvenile court erred when it found that the Agency had complied with the notice requirements of ICWA.

### A.  *Trial Court Background*

Although Mother initially told the social worker that she did not have Native American heritage, on March 13, 2014, appellant submitted an ICWA-020 form, "Parental Notification of Indian Status," in which she had indicated possible Native American heritage in the Muskogee/Creek tribes.  The court therefore continued the disposition hearing and directed the Agency to provide the required ICWA notice.[5]

On April 21, 2014, at the continued disposition hearing, county counsel informed the court that the Agency had filed all required ICWA notices.  The record also contains copies of an ICWA packet, filed on March 21, 2014, in which the Agency provided an "ICWA-030" form, "Notice of Custody Proceeding for Indian Child," along with a copy of the petition and proof of certified mail to the Cherokee Nation, the Muscogee (Creek) Nation of Oklahoma, the Bureau of Indian Affairs, and the Secretary of the Interior.[6]  In its ruling, the court stated that notice of the hearing date had been given as required by law.

---

[5] As previously discussed (see "Factual and Procedural Background, *ante*), minute orders from 2007 and 2008, in which Mother's parental rights were terminated with respect to D.S.'s siblings, stated that one of the two siblings was an Indian child.  The order for the other sibling reflected that ICWA notice had been provided in that case.  At the March 13 hearing, D.S.'s counsel stated that she had been counsel for one of D.S.'s siblings, and she recalled that the sibling had been eligible for enrollment in a tribe.  She did not remember whether the sibling was eligible through Mother or the father, noting that "[i]t may have been through the father.  I do understand that we have two different fathers in this case."

[6] We have granted the Agency's request for judicial notice of information contained in four United States Postal Service tracking confirmation documents indicating delivery of each of the ICWA notices sent in this case.  (See Evidence Code, §§ 452, subd. (h), 453.)  These documents were received by the Agency before the April 21, 2014 hearing but, as the Agency explained in its request for judicial notice, it did not present them to the court at that hearing because Mother did not then challenge the adequacy of the ICWA notice.

9

## B. *Legal Analysis*

"Congress passed the ICWA in 1978 to 'promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children "in foster or adoptive homes which will reflect the unique values of Indian culture . . . ." ' [Citing, inter alia, 25 U.S.C. § 1902.] [¶] The ICWA's procedural and substantive requirements must be followed in involuntary child custody proceedings when an 'Indian child' is involved. An 'Indian child' is defined by the ICWA as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4).)

"Among the procedural safeguards included in the ICWA is the provision for notice. The ICWA provides in part: 'In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior] in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. . . .'[7] (25 U.S.C. § 1912(a).) 'Notice shall be sent whenever there is reason to believe the child may be an Indian child, and for every hearing thereafter unless and until it is determined that the child is not an Indian child.'

---

[7] Pursuant to applicable federal regulations, in California, such notice must be given to the Bureau of Indian Affairs (BIA) in Sacramento. (25 C.F.R. § 23.11(b), (c)(12).) "The purpose of notice to the BIA is that it 'presumably has more resources and skill with which to ferret out the necessary information' [citation], such as which tribe or tribes might be entitled to notice." (*In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1406.)

(Cal. Rules of Court, rule 1439(f)(5).)" (*In re Jeffrey A.* (2002) 103 Cal.App.4th 1103, 1106-1107, fn. omitted; see also *In re Levi U.* (2000) 78 Cal.App.4th 191, 195-196.)

Section 224.2, which addresses the notice requirement, provides in relevant part: "If the court, a social worker, or probation officer knows or has reason to know that an Indian child is involved, any notice sent in an Indian child custody proceeding under this code shall be sent to the minor's parents or legal guardian, Indian custodian, if any, and the minor's tribe and comply with all of the following requirements: [¶] . . . [¶] (2) Notice to the tribe shall be to the tribal chairperson, unless the tribe has designated another agent for service." (§ 224.2, subd. (a); accord, rule 5.481(b)(4).)

Here, Mother argues that the Agency failed to comply with the notice requirements of section 224.2, subdivision (a), and rule 5.481(b)(4), in that the notice was improperly addressed to the "ICWA Representative" for each tribe, rather than to the tribal chairperson or another designated agent. She further argues that because there is no evidence of actual notice to the tribes, the court's error in finding that the Agency had complied with ICWA's notice requirements was prejudicial. (See *Nicole K. v. Superior Court* (2007) 146 Cal.App.4th 779, 784 [notice error not harmless in absence of evidence that tribe received actual notice of proceedings].) Therefore, according to Mother, the matter must be remanded to the juvenile court with instructions to comply with ICWA.

This case is distinguishable from *In re J.T.* (2007) 154 Cal.App.4th 986, 994, a case relied on by Mother, in which Division Five of this District held that sending ICWA notices to a tribe without specifying a recipient was not harmless error since "[t]he purpose of the requirement that notice be sent to the designated persons is to ensure that notice is received by someone trained and authorized to make the necessary ICWA determinations, including whether the minors are members or eligible for membership and whether the tribe will elect to participate in the proceedings. Receipt by an unidentified person at the tribe's address does not fulfill this purpose." (See also *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1201 [where record contained no verification that notice actually reached one tribe or appropriate representatives of two other tribes, appellate court rejected claim of substantial compliance with ICWA]; *Nicole K. v.*

11

*Superior Court*, *supra*, 146 Cal.App.4th at p. 784 [where ICWA notice was sent to tribe at wrong address, fact that record contained signed return receipt for misaddressed notice did not render error harmless since there was no evidence that signature was that of tribe member].)

In the present case, although no name was specified, the record reflects that the tribal notices were sent to the "ICWA Representative" of each tribe at the correct address and that the tribes received the notices. Thus, unlike in *In re J.T.*, the evidence shows that the Agency substantially complied with ICWA's purpose of ensuring "that notice is received by someone trained and authorized to make the necessary ICWA determinations." (*In re J.T.*, *supra*, 154 Cal.App.4th at p. 994.) The error in failing to name the ICWA representative was harmless.

### *DISPOSITION*

The juvenile court's orders are affirmed.  Our decision is final as to this court immediately (rule 8.490(b)(2)(A)).


_____
Kline, P.J.


We concur:


_____
Richman, J.


_____
Brick, J.*


\* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13