Filed 6/24/22  In re J.H. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.H. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E078219 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J286258 & J286259 & J286260 & J286261) |
| v. | OPINION |
| A.H. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed.

Melissa A. Chaitin under appointment by the Court of Appeal, for Defendant and Appellant A.H.

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant S.M.

1

Tom Bunton, County Counsel, David Guardado, Deputy County Counsel for Plaintiff and Respondent.

Defendants and appellants S.M. (Mother) and A.H. (Father; collectively, Parents) are the parents of four sons, Al.M. (born January 2014), An.H. (born November 2014), Joh.H. (born 2017), and Jos.H. (born 2019; collectively, the Children). Parents appeal from the juvenile court's termination of their parental rights under Welfare and Institutions Code[1] section 366.26. On appeal, Parents contend that the juvenile court's ruling that the Indian Child Welfare Act[2] (ICWA) did not apply must be reversed because plaintiff and respondent San Bernardino County Children and Family Services (the Department) failed to adequately perform its initial duty of inquiry to determine whether the Children are Indian children. For the reasons set forth *post*, we affirm the juvenile court's order terminating parental rights.

## FACTUAL AND PROCEDURAL HISTORY[3]

Parents married in 2013, when Mother was 17 years old and Father was 30 years old. According to maternal grandmother (MGM), Mother had severe developmental

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[3] The only issue on appeal is whether the trial court failed to comply with ICWA. Therefore, the factual and procedural history will address the history related to ICWA.

delays as a child; functions at a kindergarten level; and is unable to read or write. Parents were homeless in late 2018 for about four months, and resided with MGM sporadically.

The Department first investigated the family in 2014. Then, in 2018, the three older children were removed from Parents' care for substance-related issues, domestic violence, and mental health issues. The three older children were returned in 2019, and the case was dismissed in 2020. When Jos. was born in 2019, he was placed in custody, but was also returned to Parents in 2020. During those cases, the juvenile court found Father to be the presumed father of the Children.

On August 10, 2020, the family came to the attention of the Department via an immediate response referral. Law enforcement responded to the home after receiving a call wherein it was reported "there was fighting, screaming, and children crying." Law enforcement found "[Jos.] only in a diaper sitting on the floor while [Mother] was approximately 15 feet away in the bush planter and bleeding from the lip." Parents were heavily intoxicated and mother appeared to possibly be overdosing. Mother claimed that she hit her head on the sink and Father claimed that Mother fell and hit the wall. Mother was transported to the hospital because of her level of intoxication and concerns of a possible overdose.

Father was uncooperative with law enforcement. He yelled and screamed, and kicked and hit his head for two hours. Law enforcement took Father into custody. They believed Father was under the influence.

Law enforcement had been out to the home previously in July 2020 when MGM requested a welfare check because she was concerned about Mother being under the

3

influence. Law enforcement indicated that Mother would be arrested when she was released from the hospital.

On August 12, 2020, the Department filed petitions on behalf of the Children under section 300, subdivisions (a), (d), (g), and (j), alleging concerns related to substance abuse, domestic violence, Mother's mental health concerns, prior dependencies, and physical abuse to Al., An., and Joh. On August 13, 2020, the court held a detention hearing. Mother was present but Father was not present because he was incarcerated and unable to be transported to the court.

When Mother was questioned regarding ICWA, she denied any Indian ancestry. She also completed (1) an ICWA-020 form and indicated that she had no Indian ancestry; and (2) an ICWA Inquiry form (CFS 030) that indicated no Indian ancestry, and listed MGM as a potential placement resource. The court then made detention findings and orders, and set the matter for a combined jurisdiction and disposition hearing.

On September 3, 2020, the trial court held a combined jurisdiction and disposition hearing; both parents were present. For the hearing, the Department prepared a report outlining its recommendation that the court find the allegations in the section 300 petition true, and not offer reunification services to Parents under section 361.5, subdivision (b)(13).

In the report, the social worker stated that in a prior dependency from 2018, ICWA was found not to apply to Al., An., and Joh. Copies of petitions and minute orders regarding the prior dependency were attached to the report. The social worker discussed the investigation that took place upon detention of the Children and information Father

4

provided during his interview. Father stated that Mother physically abused the Children, Mother got drunk when drinking alcohol, and the two of them did not engage in domestic violence. MGM reported that Father was abusive toward Mother and was on drugs.

At the hearing on September 3, 2020, after being questioned about his Indian ancestry, Father denied any such ancestry. Father completed an ICWA-020 form wherein he denied any Indian ancestry. Father also completed a CFS 030 form where he further denied Indian ancestry.

Parents requested a contested hearing and the matter was set for a contested hearing on October 1, 2020.

Parents attended the contested hearing on October 1. After argument, the juvenile court found the allegations true and denied reunification services to Parents. The court also found that ICWA did not apply. The court then set a section 366.26 hearing for January 29, 2021.

Thereafter, after the Department prepared a report outlining its recommendation that the court order another planned permanent living arrangement for the Children, the court changed the permanent plan and set a permanency planning review hearing for July 29, 2021.

At the hearing on July 29, 2021, Parents were not present. The Department prepared a report outlining the recommendation that the court set a section 366.26 hearing to establish a plan of adoption for the Children. The court followed the recommendation and set the matter for a section 366.26 hearing for November 24, 2021.

At the section 366.26 hearing on November 24, 2021, Parents were present. The Department's report for the hearing outlined its recommendation that the court terminate parental rights and order adoption as the permanent plan. The social worker reported that the Children's foster parents decided to adopt the Children.

Additionally, the Department submitted an addendum report wherein the social worker reported that although Parents had completed some services, it did not appear that they had benefitted because of the ongoing domestic violence concerns.

Prior to the hearing, Father submitted a section 388 petition requesting reunification services. The court summarily denied the petition for failure to state a change of circumstances.

The section 366.26 hearing was set contested by Parents for December 3, 2021.

Parents were present at the contested hearing. After hearing testimony and arguments, the court terminated the parental rights of both parents as to the Children and ordered adoption as the Children's permanent plan.

On December 13, 2021, Father filed his timely notice of appeal. On January 11, 2022, Mother filed her timely notice of appeal.

## DISCUSSION

A.  THE JUVENILE COURT PROPERLY FOUND THAT ICWA DID NOT APPLY

Mother contends that "the juvenile court's ICWA findings made at the jurisdiction and disposition hearing must be reversed because the Agency did not comply with ICWA's inquiry requirements and substantial evidence did not support the court's

findings ICWA did not apply." "Father joins in [and] adopts by reference the arguments set forth in the opening brief filed by mother." The Department concedes that it failed to comply with ICWA's initial inquiry requirements. The Department, however, contends that the error was harmless.

Therefore, the sole issue on appeal is whether prejudice resulted from the failure to ask Parents' known relatives about their, or the Children's, possible Indian ancestry. On this record, we agree with the Department that the error was harmless.

### 1. LEGAL BACKGROUND

ICWA, enacted in 1978, is a federal law, which is recognized and applied in California. (See, e.g., *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1197.) Its purpose is to protect the interests of Indian children and to promote the stability and security of Indian tribes and families. (25 U.S.C. § 1902; see, e.g., *In re Elizabeth W.* (2004) 120 Cal.App.4th 900, 906.) The law was adopted "in response to concerns ' "over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." ' [Citations.] [The] ICWA addresses these concerns by establishing 'minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.' " (*In re Abbigail A.* (2016) 1 Cal.5th 83, 90.)

"In 2006, California adopted various procedural and substantive provisions of ICWA. [Citation.] In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2019 . . . , and govern here." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048, fn. omitted.) The new statute defines the actions necessary to determine a child's possible status as an Indian child.

ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); accord, § 225.1, subd. (a) [adopting the federal standard].) "Being an 'Indian child' is thus not necessarily determined by the child's race, ancestry, or 'blood quantum,' but depends rather 'on the child's political affiliation with a federally recognized Indian Tribe.' " (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882.)

"ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child. [Citation.] Federal regulations implementing ICWA, however, require that state courts 'ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child.' [Citation.] The court must also 'instruct the parties to inform the court if they subsequently receive

8

information that provides reason to know the child is an Indian child.' " (*In re Austin J.*, *supra*, 47 Cal.App.5th at pp. 882-883.)

Since states may provide "a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under" ICWA (25 U.S.C. § 1921), under California law, the court and the county welfare department have an "affirmative and continuing duty to inquire" whether a child in dependency proceedings "is or may be an Indian child." (§ 224.2, subd. (a) [the duty to inquire whether a child is or may be an Indian child begins with the initial contact]; Cal. Rules of Court, rule 5.481(a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 14.)

Initially, the county welfare department must ask the "child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) At the parties' first appearance before the juvenile court, the court must ask "each participant present in the hearing whether the participant knows or has *reason to know* that the child is an Indian child" (§ 224.2, subd. (c), italics added), and "[o]rder the parent . . . to complete *Parental Notification of Indian Status* ([Cal. Judicial Council] form ICWA-020)." (Cal. Rules of Court, rule 5.481(a)(2)(C).)

When there exists a *reason to believe* that an Indian child is involved, the social worker must "make further inquiry regarding the possible Indian status of the child." (§ 224.2, subd. (e).)

9

"On appeal, we review the juvenile court's ICWA findings for substantial evidence. [Citations.] But where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1051.)

## 2. *ANALYSIS*

In this case, Parents contend that the Department "and the juvenile court failed to comply with their duties of inquiry under the ICWA." Specifically, Mother contends that under section 224.2, subdivision (b), the Department was required to inquire with her relatives whether the children had Indian heritage. Because the Department failed to interview MGM, "compliance with ICWA was defective."

In the respondent's brief, the Department concedes that it and the court failed to comply with section 224.2, but argues that the error was harmless: "Admittedly, under state requirements, the record does not reflect that the Department complied with its duty of inquiry in failing to inquire of the maternal grandmother or the paternal aunt. However, there has been no indication that either of these individuals would have provided information that the children have Indian ancestry requiring either a more rigorous inquiry or notice."

Based on the above, we only need to consider whether the failure to inquire and provide notice constituted harmless error.

We first acknowledge that appellate courts "are divided as to whether a parent must make an affirmative showing of prejudice to support reversal." (See *In re Antonio R.* (2022) 76 Cal.App.5th 421, 433.) Therefore, the standard of prejudice requiring

10

reversal in cases involving an allegedly deficient ICWA inquiry remains unsettled. (*Ibid.*)

In *In re A.C.* (2021) 65 Cal.App.5th 1060 (*A.C.*), this court held that the failure to comply with a state statutory requirement regarding ICWA inquiry "must be held harmless unless the appellant can show a reasonable probability that he or she would have enjoyed a more favorable result in the absence of the error." (*Id.* at p. 1069; see also *In re A.M.* (2020) 47 Cal.App.5th 303.) "This means a parent asserting failure to inquire must show—at a minimum—that, if asked, he or she would, in good faith, have claimed some kind of Indian ancestry." This included considering evidence raised for the first time on appeal that there was Indian ancestry. The court reasoned considering this evidence favored the child's father as he was unable to show prejudice on the record. (*A.C.*, at pp. 1069, 1071, 1073.)

The court in *In re Y.W.* (2021) 70 Cal.App.5th 542 (*Y.W.*), pointed out a flaw in *A.C.*'s reasoning. "A parent, however, does not need to assert he or she has Indian ancestry to show a child protective agency's failure to make an appropriate inquiry under ICWA and related law is prejudicial. The court[] in . . . *A.C.*, *supra*, 65 Cal.App.5th 1060, [] missed (and the Department's argument misses) the point of the statutory requirement that the social worker ask all relevant individuals whether a child is or may be an Indian child: to obtain information the parent may not have. It is unreasonable to require a parent to make an affirmative representation of Indian ancestry where the Department's failure to conduct an adequate inquiry deprived the parent of the very knowledge needed to make such a claim. [Citation.] The Department's failure to

11

conduct an adequate inquiry into [the children]'s possible Indian ancestry makes it impossible for [the parents] to demonstrate prejudice." (*Y.W.*, at p. 556.)

This court in *In re Benjamin* M. (2021) 70 Cal.App.5th 735, further rejected this court's reasoning in *A.C.*, finding that "We believe, however, that the facts of this case show why such a requirement is contrary to the framework of ICWA and to the flexible, case-by-case approach that a harmless error analysis usually entails. [Citation.] Here, if read as saying a parent must claim she herself has Indian ancestry, the rule would apply to deny [the mother] relief because she has disclaimed such ancestry. If read somewhat more broadly as saying a parent must claim the child has Indian ancestry, then [the mother] could make that claim based only on knowledge of [the father]'s ancestry, which she has no legal duty or necessary logical reason to know. . . . Furthermore, it is in part the tribe's right to a determination of a child's Indian ancestry, but the tribe is not present, and the agency is charged with obtaining information to make that right meaningful. And we must keep in mind that a collateral attack on a juvenile court judgment based on later discovered information can wreak havoc on a child's stability if the child turns out to have been an Indian child all along. [Citation.] That risk would be greater, and even more unacceptable, if the agency foregoes basic inquiry into potentially meaningful, easily acquirable information. We accordingly decline to apply the rule from cases such as *In re A.C.* here." (*Benjamin M.*, at p. 745.)

Applying *Benjamin M.*'s definition of prejudice in this case, we conclude the record fails to demonstrate that, although the department did not conduct an initial

inquiry regarding the Children's Indian ancestry with Parents' relatives, the error was harmless.

In *Benjamin*, the father of the child never made an appearance in the case, but the Department had some contact with his extended relatives, but nothing in the record supported that the Department asked any of the relatives about their Indian ancestry. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 740.) At the jurisdiction/disposition hearing, the juvenile court concluded that ICWA did not apply. Only the mother of the child appealed, and she claimed that the order terminating parental rights to the child must be reversed for the failure to comply with the duty of initial inquiry as to the father of the child's potential Indian ancestry. (*Ibid.*) On appeal, this court found that "neither the duty of further inquiry nor ICWA's notice provisions are at issue because no one has contended there is 'reason to believe' [the child] is an Indian child. Rather, [the mother's] contention has to do with the effect of [the Department]'s conceded failures during its initial inquiry to gather information that could have triggered additional duties and 'heightened requirements.' " (*Id.* at p. 742.)

The facts in this case are distinguishable from the facts in *Benjamin M.* Here, although the Department failed to make the initial inquiry to determine whether the Children had Indian ancestry, we note that neither parent contests that in two prior dependency cases in 2018 and 2019, the juvenile court found that ICWA did not apply to the Children. Mother is the biological mother of all four children and Father is the presumed father of all four children. Although the ICWA findings have been made by the court since 2018, there has never been a challenge to the findings. Moreover, in this

13

case, Mother challenges the Department's failure to interview maternal relatives regarding possible Indian ancestry—"certainly, the grandmother would know the names of other maternal relatives, especially the one that resided in her home, and could have provide[d] that information to [the Department] if an inquiry had been made. The information those *maternal* relative[s] could have given would likely have shed meaningful light on whether there was a reason to believe mother's four sons were Indian children." Here, Mother had resided with MGM, a relative, with whom she had resided in the past. Additionally, as Mother concedes, that "[t]he missing Indian heritage information was readily obtainable because [the Department] has either spoken to the maternal grandmother about placement at the beginning of the case, had her telephone number and knew where she resided *as the children were placed with her during the previous dependency cases*." (Italics added.) Again, in the previous dependency cases, when the Children were placed with MGM, the juvenile court found that ICWA did not apply to the Children. There is nothing in the record to indicate that MGM had not been previously interviewed about ICWA while the Children were under her care in the two dependencies. Although Mother contends that interviewing her relatives "was very important because of mother's limited cognitive abilities," we disagree. The court, as the trier of fact, was able to assess whether Mother was able to understand whether she had Indian heritage—on three separate occasions. During all three dependencies, mother was consistent with her answer.

Moreover, unlike *Benjamin M.*, wherein the father was absent from the proceedings, Father has made an appearance in this case and has answered questions

14

regarding Indian ancestry. In *Benjamin M.*, there was no information on the children's Indian ancestry from their paternal side. Here, Father stated he had no Indian ancestry and the court found, during the two prior dependencies, that the Children had no Indian ancestry from both parents. Therefore, we find that the Department's failure to conduct an initial inquiry with the Children's MGM was harmless.

Our conclusion is supported by a recent decision in *In re Darian R.* (2022) 75 Cal.App.5th 502 (*Darian R.*) (petn. for review denied Jun. 1, 2022), a Second Appellate decision, that followed our standard set forth in *Benjamin*, *supra*, 70 Cal.App.5th 735. In *Darian*, the mother, like Parents in this case, appealed based solely on the issue that the agency failed to interview the mother's relatives regarding the children's Indian ancestry.

In *Darian R.*, as in this case, both parents denied Indian ancestry and the agency failed to interview the mother's relatives. (*Darian R.*, *supra*, 70 Cal.App.5th at p. 510.) Moreover, just as in this case, there was a previous dependency concerning the parents' other children in which the juvenile court found ICWA did not apply in 2015, and the parents never challenged the finding. (*Darian R.*, *supra*, 75 Cal.App.5th at pp. 509-510.) "This case substantially differs from *Benjamin M.*, where the mother was challenging the social services agency's failure to interview a paternal relative whom the mother may not have known. Here, mother at various times lived with the relatives she claims DCFS failed to interview. In further contrast to *Benjamin M.*, it is undisputed that the juvenile court had already found in 2015 that ICWA did not apply to two of the children when all three children have the same parents." (*Ibid.*) The court then found that there was no prejudice even though the department failed to conduct an initial inquiry into the

children's Indian ancestry because "[t]he record simply does not support mother's unvarnished contention that additional interviews of mother's father and sister would have meaningfully elucidated the children's Indian ancestry." (*Ibid.*)

Here, just as in *Darian R.*, neither parent cites to evidence to support their claim that an Indian child may be involved. Moreover, after the court's findings that ICWA did not apply in 2018 and in 2019, and Parents denying any Indian ancestry in this dependency, neither parent has ever raised the possibility that any of the Children had Indian ancestry. Instead, Mother waited until this appeal, joined by Father, after parental rights were terminated, to assert that the inquiry was inadequate. We agree with *Darian R.* that "the record shows no prejudice flowing from [the Department]'s failure to interview [the extended relatives]." (*Darian R.*, *supra*, 75 Cal.App.5th at p. 510.)

In *Benjamin M.*, a panel of this court found that a reversal is not required absent some indication in the record that there is readily obtainable information that is likely to bear meaningfully upon whether the dependent child is an Indian child. (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 744-745.) The record in this case simply does not suggest information of this nature exists and, as such, Parents have not suffered prejudice warranting reversal. For these same reasons, we would conclude that any alleged error in this case would be harmless, even if we applied the traditional standard of prejudice.

Notwithstanding the above, Mother cites *Y.W.*, *supra*, 70 Cal.App.5th 542 in support of her appeal. Mother's reliance on *Y.W.* is misplaced. In *Y.W.*, the mother was adopted at age two by unrelated adoptive parents; the mother was estranged from both of her adoptive parents, and the mother had no contact with her biological parents. In this

16

case, there is no evidence of either parent being adopted. They both grew up with their biological families. Both parents indicated they had no Indian ancestry. Unlike the mother in *Y.W.*, there is no evidence that Parents are estranged or grew up estranged from their biological families. Again, as noted in detail above, in 2018 and 2019, when the juvenile court found that ICWA did not apply, neither parent disputed this finding. The record simply does not support Mother's contention that interviewing MGM would have lead to meaningful information about the Children's Indian ancestry.

In all the cases the Mother cites to support her argument, not one case has facts similar to this case—two previous findings by the juvenile court that ICWA did not apply. Based on the above, we find the Department's error to conduct an initial ICWA inquiry with Mother's relatives to be harmless.

## DISPOSITION

The juvenile court's order terminating the parental rights of Parents is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____

J.

We concur:


McKINSTER _____

Acting P. J.


FIELDS _____

J.