Filed 1/3/23 In re A.S. CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.S. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>N.G.,<br><br>    Defendant and Appellant. | E078987<br><br>ORDER MODIFYING OPINION; AND DENIAL OF PETITION FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

The petition for rehearing filed by defendant and appellant on December 20, 2022, is denied. The opinion filed in this matter on December 7, 2022, is modified as follows:

The third sentence of the first line is changed from "Affirmed with directions" to "Conditionally reversed with directions."

The last line of the first full paragraph (starting on page two) is changed from "For the reasons set forth *post*, we find the errors prejudicial and conditionally affirm and

remand with directions" to "For the reasons set forth *post*, we find the errors prejudicial and conditionally reverse and remand with directions."

The first line of the disposition is changed to "The order terminating parental rights to the Children is conditionally reversed."

Except for these modifications, the opinion remains unchanged. The modifications do not effect a change in the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER_____
　　　　　　　　　　　　　　　　　Acting P. J.

I concur:

RAPHAEL_____
　　　　　　　　　J.

2

Filed 12/7/22  In re A.S. CA4/2 (unmodified opinion)

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re A.S. et al., Persons Coming Under the Juvenile Court Law.

|  |  |
|---|---|
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E078987 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ1900286) |
| v. | OPINION |
| N.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Susanne S. Cho, Judge.

Affirmed with directions.

Maryann M. Goode, under appointment by the Court of Appeal, for Defendant and

Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Julie K. Jarvi, Deputy

County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant N.G. (Mother) and J.S. (Father[1]; collectively, Parents) are the parents of Au.S. (born June 2018; Child1) and Ar.S. (born January 2020; Child2; collectively, the Children). Mother appeals from the juvenile court's termination of her parental rights under Welfare and Institutions Code[2] section 366.26. The sole issue on appeal is whether the errors by the juvenile court and the Riverside County Department of Public Social Services (the Department), in complying with the duty of initial inquiry under the Indian Child Welfare Act[3] (ICWA), are prejudicial. For the reasons set forth *post*, we find the errors prejudicial and conditionally affirm and remand with directions.

## FACTUAL AND PROCEDURAL HISTORY

Parents started dating in 2014. Their first daughter, Child1 was born in June 2018; their second daughter, Child2 was born 18 months later in January 2020.

The Department received a referral for general neglect on July 22, 2019, before Child2 was born. The referral stated that Parents had been using methamphetamine for the past year while caring for their one-year-old daughter. "The referent reported

---

[1] Father is not a party to this appeal.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

hav[ing] seen meth pipes laying around the home. Furthermore, it was reported there [was] domestic violence between the parents in the presence of the baby."

On July 31, 2019, a social worker met with the maternal grandparents (MGPs); they provided the social worker with directions to Parents' home. The maternal grandfather (MGF) expressed concern about the drug use of Parents. He stated that he found a methamphetamine pipe on the apartment floor that was close to Child1. The maternal grandmother (MGM) also expressed concern about Parents' drug use.

When the social worker met with Mother, she admitted using methamphetamine on a daily basis while caring for Child1. Mother also told the social worker that Father smoked methamphetamine while caring for Child1.

When the social worker interviewed Father, he admitted that he first started using methamphetamine when he was 15 years old, and he used methamphetamine continuously to remain under the influence all the time. Father agreed with Mother that they smoked methamphetamine outside the home while Child1 was inside. Father met Mother because he was MGF's drug dealer. Father also confirmed a recent physical altercation between Parents.

On July 31, 2019, Parents denied having any Native America ancestry when an ICWA inquiry was conducted. They also denied (1) living on an "Indian Reservation/Rancheria/community"; (2) attending school or receiving services or benefits from a tribe; or (3) receiving "services that were available to Indians . . ., such as Indian Health Services."

The following day, on August 1, 2019, the Department filed a petition on behalf of Child1 under section 300, subdivision (b)(1). Four days later, a subsequent petition was filed.

At a detention hearing on August 6, 2019, Parents, MGPs, and a maternal uncle were present. The court found Father to be Child1's presumed father. The court also found that both Parents completed a Parental Notification of Indian Status form (ICWA-020); they indicated that they did not have any Indian ancestry. Father's attorney also informed the court that Father did not have Indian ancestry. The court ordered the ICWA-020 forms be filed. Thereafter, the court found that the Department conducted a sufficient inquiry regarding whether the child may have Indian ancestry, and found that ICWA did not apply. The court then went on to find that Child1 was not an Indian child. The court detained Child1 and found that she came within section 300, subdivision (b).

On August 6, 2019, both Parents filed their ICWA-020 forms indicating that they did not have Indian ancestry.

On August 16, 2019, the social worker made a subsequent ICWA inquiry with Mother, and three days later, the social worker made a subsequent inquiry with Father. Consistent with their prior answers, both Mother and Father denied (1) having any Indian ancestry; (2) living on an "Indian Reservation/Rancheria/community"; (3) attending school or receiving services or benefits from a tribe; or (4) receiving "services that were available to Indians . . ., such as Indian Health Services.

Father requested that Child1 be placed with a paternal aunt, N.S. (Aunt). When the social worker spoke with Aunt on August 21, 2019, Aunt stated that she "has been

4

disconnected from [Father] for months" and she was unaware that Child1 was in foster care. Aunt was unable to be evaluated fully for placement because her roommates failed to cooperate with the social worker in conducting background clearances. The social worker asked Aunt to identify other paternal relatives who may be interested in placement. Aunt, however, stated that other paternal family members had criminal and/or CPS history.

MGPs were also evaluated for placement of Child1. The Department concluded that the home was high risk given Mother's history and disclosures about her own childhood.

On September 26, 2019, the juvenile court found that ICWA did not apply and that Child1 was not an Indian child. The court also found true the allegations in the first amended petition and that Child1 came within section 300, subdivision (b). The court adjudged that Child1 was a dependent of the court and removed custody of her from Parents' care. The court ordered the Department to provide Parents with reunification services.

Four months later, in January 2020, Mother gave birth to Child2. On February 3, 2020, the Department filed a section 300 petition as to Child2, alleging that Child2 came within the jurisdiction of the court under section 300, subdivision (b)(1). According to the Indian Child Inquiry Attachment, when Parents were interviewed on January 26, 2020, both Parents continued to report that they had no Indian ancestry. Moreover, Parents continued to use methamphetamine.

On January 26, 2020, the Department conducted an inquiry about Indian ancestry with Parents. Again, Parents denied (1) having Indian ancestry; (2) living on an "Indian Reservation/Rancheria/community"; (3) attending school or receiving services or benefits from a tribe; and (4) receiving "services that were available to Indians . . ., such as Indian Health Services.

The Department filed an amended petition on February 4, 2020. At the detention hearing on the same day, Parents and MGPs were present. Like the findings made at Child1's detention hearing, the juvenile court found that Parents had submitted their ICWA-020 forms, which had been ordered filed. On their forms, both Parents declared that they had no Indian ancestry. Father's counsel again informed the court that Father had no Indian ancestry. The court acknowledged that the parents indicated they had no Indian ancestry, and found that neither Mother nor Father was "native Indian" and that ICWA did not apply. The court then found that a prima facie showing had been made that Child2 came within section 300, subdivision (b), and detained the child.

On February 18, 2020, when the social worker made a subsequent inquiry about Indian heritage with both parents pursuant to ICWA, their answers remained the same. They both denied having Indian ancestry.

The social worker worked with Father to locate Aunt, because the social worker did not have the correct telephone number for Aunt. Although Father had agreed to provide the social worker with an updated contact number, Father had not done so. The Children were placed in the same foster home.

On February 27, the Department filed a second amended petition on behalf of Child2.

On July 28, 2020, the juvenile court held a contested status review hearing under section 366.21, subdivision (e), as to Child1, and a contested jurisdictional hearing under section 300 as to Child2.

As to Child1, the court found that ICWA did not apply, the Department had made a sufficient inquiry, and that there was no new information that ICWA may now apply. Therefore, the court found that Child1 was not an Indian child. The court terminated reunification services as to Child1 and set a section 366.26 hearing.

As to Child2, the juvenile court also found that the Department conducted a sufficient inquiry as to whether ICWA may apply, that ICWA did not apply, and that Child2 was not an Indian child. The court found true the allegations in the second amended petition and found that Child2 came within section 300, subdivision (b). Child2 was adjudged a dependent of the court and removed from parental care. The court also denied reunification services to Parents and set a section 366.26 hearing.

On August 13, 2020, the social worker interviewed Parents again regarding Indian ancestry or heritage. Mother denied having any knowledge of Indian ancestry or that any family member was a registered member of a tribe. While interviewing Father, the social worker noted that Father had the same surname as a prominent tribal leader of the Soboba Band of Luiseno Indians in San Jacinto. Father, however, denied having any ties to this group of individual, and denied having any knowledge of any family members ever

7

residing on an Indian reservation or Rancheria. Moreover, Father denied having knowledge of any family member receiving benefits such as Indian Health Services.

On September 9, 2020, the Children were moved to a new placement. The prior caregivers had health concerns and did not agree with in-person visitations with the parents due to the Covid-19 pandemic.

Thereafter, the Children were moved to several foster homes and relocated on several occasions due to their caregivers being unable to meet the Children's needs.

On January 20, 2021, Mother filed a section 388 petition requesting reunification services. The Department believed it was in the Children's best interest for Mother to be granted family reunification services. On March 5, 2021, the court granted Mother's petition for reunification services.

On October 26, 2021, the caregiver stated that she was unable to provide permanency to the Children through adoption. The Department identified prospective adoptive parents, and the Children began to visit with them on December 17, 2021. On January 7, 2022, the Children were placed in the prospective adoptive home. The Children adjusted well in the home. They appeared happy and comfortable. Moreover, the Children appeared to have a healthy attachment and bond with the prospective adoptive parents, who were committed to providing the Children with a permanent home through adoption.

In January and March of 2022, the social worker reported that there had been no new information provided to indicate that ICWA applied.

On May 4, 2022, at the section 366.26 hearing, the juvenile court terminated Parents' parental rights to the Children.

On May 11, 2022, Mother filed a timely notice of appeal.

## DISCUSSION

Mother contends that "the juvenile court failed to ensure proper compliance under the Indian Child Welfare Act ("ICWA")" because (1) the court "never spoke to the parents about the ICWA as required by . . . section 224.2, subdivision (c)" and (2) the Department "failed to sufficiently comply with its duty of initial inquiry."

ICWA, enacted in 1978, is a federal law, which is recognized and applied in California. (See, e.g., *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1197.) Its purpose is to protect the interests of Indian children and to promote the stability and security of Indian tribes and families. (25 U.S.C. § 1902; see, e.g., *In re Elizabeth W.* (2004) 120 Cal.App.4th 900, 906.) The law was adopted "in response to concerns ' "over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." ' [Citations.] [The] ICWA addresses these concerns by establishing 'minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.' " (*In re Abbigail A.* (2016) 1 Cal.5th 83, 90.)

9

"In 2006, California adopted various procedural and substantive provisions of ICWA. [Citation.] In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2019 . . . , and govern here." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048, fn. omitted (*D.S.*).) The new statute defines the actions necessary to determine a child's possible status as an Indian child.

ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); accord, § 225.1, subd. (a) [adopting the federal standard].) "Being an 'Indian child' is thus not necessarily determined by the child's race, ancestry, or 'blood quantum,' but depends rather 'on the child's political affiliation with a federally recognized Indian Tribe.' " (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882.)

"ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child. [Citation.] Federal regulations implementing ICWA, however, require that state courts 'ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child.' [Citation.] The court must also 'instruct the parties to inform the court if they subsequently receive

10

information that provides reason to know the child is an Indian child.' " (*In re Austin J.*, *supra*, 47 Cal.App.5th at pp. 882-883.)

Since states may provide "a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided" (25 U.S.C. § 1921), under California law, the court and the county welfare department have an "affirmative and continuing duty to inquire" whether a child in dependency proceedings "is or may be an Indian child." (§ 224.2, subd. (a) [the duty to inquire whether a child is or may be an Indian child begins with the initial contact]; Cal. Rules of Court, rule 5.481(a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 14.)

Initially, the county welfare department must ask the "child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) At the parties' first appearance before the juvenile court, the court must ask "each participant present in the hearing whether the participant knows or has *reason to know* that the child is an Indian child" (§ 224.2, subd. (c), italics added), and "[o]rder the parent . . . to complete *Parental Notification of Indian Status* ([Cal. Judicial Council] form ICWA-020)." (Cal. Rules of Court, rule 5.481(a)(2)(C).)

When there exists a *reason to believe* that an Indian child is involved, the social worker must "make further inquiry regarding the possible Indian status of the child." (§ 224.2, subd. (e).)

11

"On appeal, we review the juvenile court's ICWA findings for substantial evidence. [Citations.] But where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.)

In this case, the issues of further inquiry or ICWA's notice provisions are not at issue. Mother only challenges the failure to complete initial inquiry. Mother contends that the Department "failed to sufficiently comply with its duty of initial inquiry; the social workers failed to interview extended paternal and maternal family members about the ICWA as required by W&I Code Section 224.2, subdivision (b)." We agree with Mother. There is no evidence to indicate that the Department made any inquiries of either the maternal or paternal relatives about their Indian ancestry.[4]

Under ICWA, the parents and siblings of Parents are among those " 'extended family members' " the Department must interview, if possible, to help determine whether the proceeding involves an Indian child. (See Cal. Rules of Court, rule 5.481(a)(4)(A); 25 U.S.C. § 1903(2) [defines " 'extended family member' " to include "the Indian child's grandparent, aunt or uncle"].) The Department must make a good faith attempt to locate and interview extended family members who can reasonably be expected to have information concerning a child's membership status or eligibility. (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1052-1053; see *In re Breanna S.* (2017) 8 Cal.App.5th 636, 652.)

---

[4] Because we conditionally reverse based on the Department's failure to conduct an initial inquiry, we will not directly address whether the juvenile court's error in failing to ask Parents directly about ICWA under section 224.2, subdivision (b), was also prejudicial.

However, the Department "is not required to 'cast about' for information or pursue unproductive investigative leads." (*D.S.*, at p. 1053.)

In this case, although the Department interviewed Parents on numerous occasions, there is nothing in the record to indicate that the Department interviewed the Children's grandparents, aunts, or uncles about their Indian ancestry. (*In re K.R.* (2018) 20 Cal.App.5th 701, 709-710 [agency cannot rely on absence of documentation to argue that appellant's claim of ICWA error must fail on appeal].) The social services agency is obligated "to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (*Id.* at p. 709.) Moreover, the juvenile court "has a responsibility to ascertain that the agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so." (*Ibid.*)

Here, the social worker had spoken to the MGPs and to Aunt. Moreover, a maternal uncle attended one of the hearings in this case. However, no social worker ever asked any of these relatives, who were readily available, about possible Indian heritage of the Children. Therefore, because the Department failed to document the inquiry efforts required under section 224.2, there is insufficient evidence to support the court's determination that ICWA did not apply to the case. (See § 224.2, subds. (b), (c) & (e); accord, *In re Darian R.* (2022) 75 Cal.App.5th 502, 509.)

Nonetheless, when an appeal concerns "the *agency's* duty of initial inquiry, only state law is involved. Where a violation is of only state law, we may not reverse unless we find that the error was prejudicial." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735,

742.) Currently, there is "a wide and varied split of authority among the [California] Court of Appeal regarding the proper standard to apply in determining the prejudicial effect of an agency's failure to comply with its section 224.2, subdivision (b) duty of initial inquiry [even within the same appellate court, like this court]." (*In re Y.M.* (2022) 82 Cal.App.5th 901, 911.)

Recently, in *In re Dezi C.* (2022) 79 Cal.App.5th 769 (*Dezi. C.*), our colleagues in the Second District, Division Two, explained the three different harmless error analysis rules, while creating a fourth "reason to believe" rule, as follows: "At this point in time, the California courts have staked out three different rules for assessing whether a defective initial inquiry is harmless. These rules exist along a 'continuum.' [Citation] The rule at one end of this continuum is one that mandates reversal: If the Department's initial inquiry is deficient, that defect necessarily infects the juvenile court's ICWA finding and reversal is automatic and required (the 'automatic reversal rule'). [Citations.] Under this test, reversal is required no matter how 'slim' the odds are that further inquiry on remand might lead to a different ICWA finding by the juvenile court. [Citation.] The rule at the other end of the continuum is one that presumptively favors affirmance. Hence, if the Department's initial inquiry is deficient, that defect will be treated as harmless unless the parent comes forward with a proffer on appeal as to why further inquiry would lead to a different ICWA finding (the 'presumptive affirmance rule'). [Citations] The third rule lies in between: If the Department's initial inquiry is deficient, that defect is harmless unless 'the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian

14

child' and that 'the probability of obtaining meaningful information is reasonable' ('the readily obtainable information rule')." (*Id.* at pp. 777-778.)

The *Dezi C.* court then went on to state that "despite this diversity of rules—and, indeed, perhaps because we have had the benefit of considering these rules—we propose a fourth rule for assessing harmlessness." (*Dezi C.*, *supra*, 70 Cal.App.5th at p. 778.) The court stated: "In our view, an agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding. For this purpose, the 'record' includes both the record of proceedings in the juvenile court and any proffer the appealing parent makes on appeal. To illustrate, a reviewing court would have 'reason to believe' further inquiry might lead to a different result if the record indicates that someone reported possible American Indian heritage and the agency never followed up on that information; if the record indicates that the agency never inquired into one of the two parents' heritage at all [citation]; or if the record indicates that one or both of the parents is adopted and hence their self-reporting of 'no heritage' may not be fully informed." (*Dezi C.*, *supra*, 70 Cal.App.5th at p. 779, fn. and italics omitted.)

On this appeal, although Mother accurately contends that the Department failed in its duty to interview her and Father's extended relatives, we still must determine whether this error prejudiced Mother. Although we acknowledge the four diverse harmless error analysis rules, including three different rules from this court, we cannot say the error was

harmless for several reasons. First, there is no question the information the extended relatives had, especially Aunt, the maternal uncle, and MGPs, was readily obtainable and likely to bear on the Children's Indian status. The Department had contacted Aunt and the MGPs concerning placement of the Children and other concerns. The maternal uncle attended one hearing and the MGPs attended many of the hearings. As such, the Department could have easily interviewed them concerning the Children's Indian status. The Department never asked any of the relatives regarding the Children's Indian status. Moreover, one of the social workers noted that Father had the same surname as a prominent tribal leader of the Soboba Band of Luiseno Indians in San Jacinto. Although Father denied having ties to this group, the social worker could have easily asked Aunt if she had any knowledge about any possible ties. In short, there is no good excuse for why the Department did not seek any Indian status information, especially from the MGPs, maternal uncle, and Aunt. Therefore, the Department's failure to obtain the information was prejudicial.

Notwithstanding the above, the Department argues the error was not prejudicial because both parents unequivocally denied having any Indian ancestry on numerous occasions. However, section 224.2, subdivision (b), "requires the [d]epartment to ask, as part of its initial duty of inquiry, extended family members (including the biological grandparents) whether the child is or may be an Indian child . . . . [And n]othing . . . relieves the [d]epartment of its broad duty to seek that information . . . simply because a parent states on the ICWA-020 form . . . 'I have no Indian ancestry as far as I know.' " (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554.) "Such a rule ignores the reality that parents

16

may not know their possible relationship with or connection to an Indian tribe." (*Ibid.*) Moreover, the Department's "position ignores the express obligation that section 224.2, subdivision (b), imposes on the [d]epartment to inquire of a child's extended family members—regardless of whether the parents deny Indian ancestry." (*In re Antonio R.*, 2022) 76 Cal.App.5th 421, 431.) And, as we explained in *Benjamin M.*, although we do not know what the extended family members will say in response to an inquiry by the Department, their answers are likely to bear meaningfully on the question of whether the Children are or may be Indian children. (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 744-745.)

Moreover, we cannot reasonably infer that Parents inquired with their family members about possible Indian heritage before denying Indian ancestry, as there is no evidence suggesting they did or did not. Absent some evidence suggesting Parents already asked their family members, or that the information the family members have is unlikely to meaningfully bear on the children's Indian status (one way or the other), the Department is obligated to speak to them precisely because we cannot impute knowledge one family member has about their family to all family members. Moreover, it is not the parent's duty to ask their relatives for this information, it is the Department's. Without more, the Department cannot rely on the parent's denials assuming they did the work for it—it must perform the investigation itself.

For these reasons, "[w]here the Department fails to discharge its initial duty of inquiry under ICWA and related California law, and the juvenile court finds ICWA does not apply notwithstanding the lack of an adequate inquiry, the error is in most

17

circumstances, as here, prejudicial and reversible." (*Antonio R.*, *supra*, 76 Cal.App.5th at p. 435.) Therefore, a conditional reversal is required under *Benjamin M.*, which is grounded in our state's constitutional rule for determining whether error is prejudicial and requires reversal. (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 742-744; Cal. Const., art. VI, § 13.) Accordingly, we vacate the order terminating parental rights to permit the Department to complete its initial inquiry.

## DISPOSITION

The order terminating parental rights to the Children is conditionally affirmed. The matter is remanded to the juvenile court with directions to comply with the initial inquiry provisions of ICWA and of Welfare and Institutions Code sections 224.2 and 224.3 (and, if applicable, the notice provisions as well), consistent with this opinion. If, after completing the initial inquiry, neither the Department nor the court has reason to believe or reason to know that the Children are Indian children, the order terminating parental rights will remain in effect. If the Department or the court has reason to believe that the Children Indian children, the court shall proceed accordingly.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

RAPHAEL
J.

18